## BONNER v. CANNON.
### No. 542.

Circuit Court of Appeals, Tenth Circuit.
July 25, 1932.

Guy H. Sigler and H. A. Ledbetter, both of Ardmore, Okl. (H. E. Ledbetter and P. M. Jackson, both of Ardmore, Okl., on the brief), for appellant.

J. B. Moore, of Ardmore, Okl., for appellee.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

J. S. Mullen was adjudged bankrupt in 1922. He owned lands in several counties in Oklahoma. He had given mortgages to Waddell Investment Company and to others that were first liens. He had also given second mortgages on these lands, one to appellant Bonner to secure an indebtedness of $100,-000.00 which covered the lands mortgaged to Waddell Investment Company. There were many judgment liens on some or all of these lands. The record here does not disclose that he had any unincumbered property. In 1924 the trustee filed a petition with the referee in bankruptcy stating the involved condition of the bankrupt's estate wherein he asked that the referee ascertain and fix the amount and priorities of liens on lands of the estate and then enter decree that they be sold free and clear of said liens and taxes, and that the liens so adjudged be transferred to the money realized at the sale. The referee set a time for hearing. All known creditors and lien-claimants were notified. Many of the lien-claimants, including Waddell Investment Company and Bonner, filed responses to the petition. Testimony was taken. The referee found the amount of the respective liens, both principal and interest, found that it was to the best interests of the estate that the lands be sold, and adjudged that they be sold free from all liens and incumbrances, and directed the trustee to make the sales. The referee's order then concluded with this:

"It is further ordered, adjudged and decreed that after the payment of the fees of the referee and trustee, as allowed by law, and the payment of a reasonable attorney's fee to the attorneys for said trustee, which said court hereby fixes with the consent of the creditors at 2½% of the sale price of said lands, that the moneys realized from said premises be applied upon the liens as hereinbefore established, and that the remainder, if any, be held by the trustee subject to further orders of this court.

"It is further ordered, adjudged and decreed that on and after the sale of said premises by said trustee, that all parties claiming any right, title or interest in or to said premises by, through or under the said J. S. Mullen, be and are hereby enjoined from ever claiming, asserting or setting up any right, title or interest in or to said premises, and that all liens existing against said premises shall be transferred from each respective tract to the funds realized from the sale of same, and that all of said premises shall be forever released from all liens now existing against same."

The trustee's notice of sale contained this, following a description of the lands:

"The above lands to be sold to the highest bidder at public outcry, terms, cash, and free from all liens, except tracts Nos. 1 to 29 inclusive and tracts No. 32, 33 & 34, on which there are mortgages drawing interest at six

per cent per annum, which the purchaser may assume as a part of the purchase price, this being agreeable to the loan companies.

"All sales to be made subject to the approval of the referee in bankruptcy, and ten per cent of the bids to be deposited in cash with the trustee at time of sale. Abstracts of title will be furnished only when the purchase price exceeds two hundred dollars."

The trustee in making report of the sale stated the amount of the highest and best bid for each tract and the name of the bidder. The report also contained this:

"Said trustee respectfully shows that the lands were sold with the consent of the mortgagees that the purchasers should have the privilege of assuming the payment of the principal of their mortgage including the interest due on the next interest paying date, which amount the purchaser should not be required to pay in cash, but the assumption of the same should be in lieu of cash to that extent.

"That while in some instances the amount of the bid is not sufficient to pay the amount due, that the said mortgagees have agreed to accept said amount in full satisfaction of all of their claim and demand against the estate of J. S. Mullen, bankrupt, and release said estate and this trustee from all liability.

"It being understood, however, in such instances where there is a deficiency that the trustee shall pay to the said mortgagees whatever amount is in his hands, or that may come into his hands for rents up to and including the year 1924, in the way of rents realized from each respective tracts, up to and including the amount owing on each respective tracts.

"It being understood, however, that there shall be retained by the trustee a sufficient amount to pay the fees of the referee, trustee and the attorneys for the trustee, and costs of sale."

Attention is now called to the fact that the trustee in his notice of sale and report of sale departed from and did not keep within the terms of the referee's decree of sale. Especially is this so in the last quoted paragraph of the report of sale wherein the trustee says that it is understood that the trustee shall retain a sufficient amount to pay "costs of sale" in addition to the fees of the referee, trustee and attorneys for the trustee.

The referee entered an order confirming the sales as reported by the trustee, and that order departs from the referee's decree of sale as did the report of the trustee, on the matter of costs of sale. Its closing paragraph is this:

"It Is Further Ordered, Adjudged and Decreed that purchasers holding first liens upon said premises shall be permitted in lieu of cash to be credited with the amount bid upon their lien after the costs of the sale, including the fees of the referee, trustee, and the attorneys for the trustee, shall be deducted as specified in the decree of sale."

Bonner was the successful bidder for seventeen tracts covered by mortgages to Waddell Investment Company and on which he held a second mortgage. He had agreed with that company to assume and pay the amount of the mortgage indebtedness on its mortgages on the tracts on which he might be the accepted bidder. He has received deeds from the trustee conveying those tracts to him. He was the successful bidder for five other tracts which have been deeded to him by the trustee. But no settlement of fees or costs of the sale of these fifteen tracts was made between Bonner and the trustee when the deeds were delivered.

The issue between Bonner and the trustee is whether he is liable for the fees and costs of sale of the fifteen tracts purchased by him, and, if liable, to what extent. He put up no money on his bids, each being less than the first mortgage debt which he assumed and had agreed to pay. That issue was brought on by a report of the trustee made to the referee in December, 1929, in which the trustee contended that Bonner was liable in each of the fifteen sales made to him for stated amounts as to each, consisting of fees or commissions to the referee and trustee, 2½% on the amount bid for attorneys fees, and other items consisting of abstract of title to each tract and taxes paid on the tract, supposedly paid by the trustee when they should have been paid by Bonner. Bonner filed exceptions to this report. He alleged that the trustee was indebted to him in the sum of several thousand dollars for rents and revenues collected by the trustee on lands on which Bonner held first mortgage liens, that certain sums arising from the sales were placed in what was known as the general fund whereas they should have been used to defray the expenses of sale on the respective tracts. At a hearing before the referee on the report and Bonner's exceptions, the referee entered an order approving said report and the accounts stated therein between the trustee and Bonner as to the items of liability on the part of Bonner. It was further ordered that if Bonner did not make payments to the trustee, as

found by the referee, within a stated time the sales to Bonner would be vacated and set aside. The referee made a finding as to Bonner's liability on each tract purchased by him, e. g.:

"Tract No. 12 for the sum of $4500.00, upon which tract said Bonner paid for tax sale certificates the sum of $735.25; the trustee paying taxes in the sum of $199.08, the costs and expenses of sale, exclusive of taxes, amounting to the sum of $271.25."

The accounts against Bonner set up by the trustee on which the referee's order was made is separately stated as to each tract purchased by Bonner, and each of them contains a charge for an abstract of title. Turning now to the referee's order of sale it will be observed that no charges should come out of the bids except fees of the referee and trustee and the attorneys for the latter, and it was provided that after the payment of these charges "the moneys realized from said premises be applied upon the liens as hereinbefore established," and all liens against the lands should be transferred to the funds realized from the sale. Bonner and several other mortgagees and judgment creditors approved the referee's decree and order of sale, and none appealed therefrom. The sales were made pursuant to that order. It is true the trustee in reporting the sales after they were made stated there was an understanding that a sufficient amount was to be retained by the trustee to pay not only the fees of the referee, trustee, and the attorneys for the trustee, but also costs of sale, and the referee in his order of confirmation used somewhat the same language, but the report and order of confirmation were made after the sales under the decree on which the purchasers had a right to rely, and there is no proof that Bonner was a party to the claimed understanding. We therefore are of opinion that Bonner cannot be taxed for the costs of abstracts of title of the tracts on which he bid. His bids on the fifteen tracts in question were in each instance less than the first mortgage lien, and in no event could costs of the abstracts be considered liens in preference to the mortgage indebtedness.

There are also in the statements of account against Bonner tax certificates in the aggregate of $2,865.62. It is claimed that Bonner purchased these certificates from the original holders and then induced the trustee to take them off his hands for what he had paid for them, and that the trustee did so in error. We assume that the law in Oklahoma, as generally elsewhere, gives a first lien for taxes prior in right to existing mortgages, and that these sums should have been discharged out of the respective bids. There are also other items of taxes apparently charged against Bonner in the trustee's accounts. It does not appear who paid them or for what years, and we are unable to conclude whether or not Bonner is liable to the trustee therefor. However, the attorney for appellee tells us in his brief that since the institution of this proceeding Bonner has reimbursed the trustee for taxes, and a condensed statement of the testimony is to the same effect.

The referee in his order approving the trustee's statements of account and Bonner's liability thereon made other findings in which he apparently held Bonner for other expenses connected with the sale of the tracts which Bonner purchased. As to ten of those tracts his order contains this:

"That in addition thereto there was assessed against all of said tracts the total sum of $386.23, same being a one per cent assessment for the general fund, and the further sum of $205.92 general costs of sale. That there are other expenses known as general expenses of the sale which have been paid by the trustee in the sum of two hundred and five and 92/100 dollars ($205.92)."

We cannot approve these charges for the reasons already stated. They are apparently for items outside the decree of sale.

Bonner petitioned for a review of the referee's order. The referee certified the matter to the District Court, and the District Judge without any statement of the facts or issues or opinion on the questions involved merely decreed that the referee's order be approved and confirmed, from which this appeal is prosecuted. Appellee has moved to dismiss the appeal on the ground that only the trustee was made a party to the appeal, whereas other interested parties have been omitted. But the referee's order treated the several tracts separately, and we think the issue of Bonner's liability, if any, is on the face of the order clearly separate and apart from the liability or interests of any of the other parties named therein.

Appellant also complains that there is an apparent duplication of the trustee's commission on the sale of each tract, one per cent thereon being charged twice except in one or two instances. We are disposed to think that one of these charges was intended as the so-called assessment for the general fund. If the applicable sections of the Bankruptcy Act (see 11 USCA §§ 76, 112) are applied, it will

appear that the trustee's commissions were undercharged in almost every instance. Notwithstanding the referee's order of sale provided only for fees of the referee and trustee, as allowed by law, we are disposed to think it should be taken to cover their statutory commissions.

We do not think the matter should be finally disposed of on this appeal. The record is too meager and unsatisfactory. The order appealed from will be reversed in so far as it affects Bonner with directions that the trustee be required to file an amended statement against Bonner only, to be disposed of after Bonner has been given an opportunity to be heard.