**CURRIN et al. v. NOURSE et al. (three cases).**

Nos. 9727–9729.

Circuit Court of Appeals, Eighth Circuit.

June 29, 1933.

William B. Bostian and Floyd E. Jacobs, both of Kansas City, Mo. (Jacobs & Henderson, of Kansas City, Mo., on the brief), for appellants.

Roy B. Thomson, of Kansas City, Mo. (I. P. Ryland, Paul R. Stinson, Arthur Mag, and Robert E. Rosenwald, all of Kansas City, Mo., on the brief), for appellee Stern Bros. Inv. Co.

Frank P. Barker, of Kansas City, Mo. (William G. Boatright, of Kansas City, Mo., on the brief), for appellees secured creditors.

Henry A. Bundschu, of Kansas City, Mo., for James B. Nourse, trustee.

James B. Nourse, of Kansas City, Mo., trustee, pro se.

Before STONE and SANBORN, Circuit Judges, and MOLYNEAUX, District Judge.

SANBORN, Circuit Judge.

These appeals were heard upon a single record. They challenge the validity of three orders of the court of bankruptcy made by the referee and confirmed by the Judge. These are: (1) An order confirming the sale by the trustee of the assets of the bankrupt to Stern Brothers Investment Company; (2) an order denying a motion of the appellants to set aside the order of confirmation; and (3) an order allocating the proceeds of the sale.

The appellants are unsecured creditors of the bankrupt with claims aggregating about $400,000. The appellees are the trustee in bankruptcy, the purchaser at the trustee's sale, and some secured creditors.

The trustee is represented by counsel, who, under the direction of the referee, has endeavored to sustain the orders in question, and who has joined the trustee with the purchaser and the secured creditors in motions to dismiss these appeals on the ground that only the trustee can appeal from the orders. At the same time, the trustee on his own behalf has filed an application to be permitted to withdraw from the motions to dismiss and to join in the appeals upon the side of the appellants in so far as may be necessary to insure them a hearing of their appeals upon the merits. He has expressed the opinion that prior to the confirmation of the sale by the referee the unsecured creditors were not given the full and fair opportunity for investigation and hearing to which they were entitled.

There is no doubt as to the right of this court to entertain these appeals. They are taken under section 24b of the Bankruptcy Act, as amended May 27, 1926, c. 406, § 9, 44 Stat. 664 (11 USCA § 47 (b). Prior to the amendment, such proceedings for review were known as petitions to revise in matters of law. That creditors may challenge an order confirming a sale has been recognized by this court in Blanke Mfg. & Supply Co. v. Craig et al., 287 F. 345, and an order denying a motion to set aside a sale, in Champlin Refining Co. v. Bailey (C. C. A.) 23 F.(2d) 657. On a second appeal in the case last mentioned (which occurred after the division of the Eighth Circuit), 36 F.(2d) 655, the Tenth Circuit, in an opinion written by Judge McDermott [who wrote the opinion in Amick v. Mortgage Security Corporation of America (C. C. A. 8) 30 F.(2d) 359, relied upon by appellees to sustain their motion to dismiss], recognized that a creditor may obtain a review of such an order under this section. These appeals invoke the power of this court "to superintend and revise in matter of law * * * the proceedings" of the court of bankruptcy. Prior to amendment, section 24b of the Bankruptcy Act (11 USCA § 47 (b) contained this provision: "Such power shall be exercised on due notice and petition by any party aggrieved." Section 24b, as amended, provides that the power shall be exercised by appeal, but the omission of the words "by any party aggrieved," we think, carries no implication that the power may not be exercised upon an appeal by aggrieved creditors directly affected by the order appealed from if this court believes that such power should be exercised in the interests of justice.

The facts out of which this controversy arises are, briefly, these: The General Utilities Company was engaged in the sale and distribution of natural gas in parts of Missouri, Kansas, and Illinois. Its assets con-

sisted of properties for the production, transmission, and distribution of such gas. Upon an involuntary petition, it was adjudged bankrupt February 4, 1932. James B. Nourse was elected trustee February 16, 1932, and has since been operating the properties in Kansas and Missouri. The properties in Illinois were disposed of in settlement of a $300,000 indebtedness, and are not involved in this controversy. The assets in Missouri and Kansas were inventoried at $1,276,983.-37, and appraised at $786,070.43. Total liabilities, secured and unsecured, were originally listed at $1,286,592.52, including the $300,-000 indebtedness disposed of by the release of the Illinois properties.

It was considered advisable to sell all the assets of the bankrupt. On May 13, 1932, the trustee was authorized to sell such assets, free of liens, at public sale on May 31, 1932. The highest cash bid at that time was $355,-000. On June 13, 1932, the referee rejected all bids, but directed the trustee to negotiate a sale. On July 9, 1932, the trustee reported two offers, one by C. O. Moore for $625,000, partly in cash and partly in securities (reduced to all cash the bid was $450,000), and one by Stern Brothers Investment Company for $405,000. The trustee recommended the sale to Moore. The referee confirmed it. Moore deposited $100,000 with the trustee in accordance with the terms of his offer. This was expended by the trustee, under the orders of the court, largely for expenses of administration. Moore defaulted, and on December 22, 1932, the referee, on petition of the trustee, set aside the sale, and deferred the determination of the question whether Moore was entitled to the return of his $100,000 or any part thereof. That question is still undisposed of and is, no doubt, of great interest to the unsecured creditors as well as to Mr. Moore.

On January 7, 1933, the referee ordered the trustee to receive sealed bids for the purchase of the assets. On January 19th the trustee delivered two sealed bids to the referee. The highest cash bid was $250,000. All bids were rejected, and the trustee was directed to sell at private sale the assets, free of liens, upon such terms and conditions as he should think best, subject to the approval of the referee.

On February 8, 1933, the trustee reported, at a general meeting of creditors, that he had entered into a contract to sell the assets to Stern Brothers Investment Company for $271,055.15 in cash plus the assumption by the purchaser of the liability of the bankrupt

for some $29,000 of meter deposits, and that "upon the advice of his counsel" he recommended to the referee the approval and confirmation of the sale. The negotiations leading up to the contract of sale were between the trustee and the purchaser. No creditor knew of the terms or conditions of the contract of sale, nor the price to be paid, until the meeting. The contract contained a number of conditions and provisions the effect of which was not readily apparent from a casual reading. It provided for a cut-off date as of November 21, 1932. The approval by the Public Service Commissions of Missouri and Kansas of the sale and of the continued operation of the properties was made a condition. The contract gave the purchaser the right to reject properties which carried burdens beyond their worth, without changing the purchase price. The sale was to be closed ten days after the approval by the Public Service Commissions, the delivery and transfer of all of the properties, evidence of ownership and title, confirmation by the court, and the adjudication of all objections and exceptions to the sale. The contract required the trustee to defend appeals from orders and decrees of the court at the expense of the estate and to protect the buyer against damages, losses, or expenses caused by any decision of any court adverse to the sale, not, however, in an amount exceeding the purchase price. There are other provisions, but those mentioned are sufficient to indicate that the contract required study on the part of any one who desired to be fully advised as to what it required of the trustee, what of the purchaser, and as to its general effect upon the rights of creditors. The appellants at once requested an opportunity to examine the contract before the sale was confirmed, and to be heard upon the question of confirmation. The trustee was not then able to furnish copies of the contract, but offered to deliver some on the following day. The referee denied the request for a continuance, refused to postpone confirmation, and entered his order approving the sale. On February 17, 1933, upon petition of the trustee, he made an order for the allocation of the proceeds of the sale. On February 18, 1933, the appellants moved that the order confirming the sale be vacated on a number of grounds. They offered to show that the sale was made by the trustee under compulsion; that it ·contained conditions which he could not meet and was therefore merely an option; that the price was inadequate; that the order of confirmation was made without an adequate opportunity for investigation or an adequate opportunity to

be heard being afforded them. The referee sustained objections to their offers of proof, and their motion was denied.

A petition for the review of each order was duly filed. On March 21, 1933, the judge confirmed the three orders of the referee. Thereafter, upon application to this court, appeals were allowed.

The appellants attack the order of confirmation and the other orders upon various grounds. The important question, we think, is whether the referee abused his discretion in confirming the sale of these properties to the purchaser under the circumstances and without granting to the appellants an opportunity for investigation and a hearing.

■ The approval of a sale of a bankrupt's property is peculiarly a matter for the court of bankruptcy, and one with respect to which this court should not and will not substitute its judgment for that of the lower court.

■ "Judicial sales are an indispensable part of the machinery employed in administering bankrupt estates. Public policy requires stability in such sales. The Ruby (D. C.) 38 F. 622; In re Burr [Mfg. & Supply Co.], 217 F. 16, 19, 133 C. C. A. 126. To induce bidding at such sales and reliance upon them, the purpose of the law is that they shall be final, Pewabic Mining Co. v. Mason, 145 U. S. 349, 356, 12 S. Ct. 887, 36 L. Ed. 732; they are not to be disturbed except for substantial reasons." Jacobsohn v. Larkey (C. C. A. 3) 245 F. 538, 541, L. R. A. 1918C, 1176.

■ An appellate tribunal is precluded from revising the exercise of discretion in setting aside a judicial sale by a court having equitable jurisdiction, unless there is an abuse of power, or the case is in other respects extreme. In re Shea (C. C. A. 1) 126 F. 153, 156; In re Wolke Lead Batteries Co. (C. C. A. 6) 294 F. 509, 511; Century Motor Truck Co. v. Noyes (C. C. A. 1) 18 F.(2d) 546, 547. The same rule would apply to the proper exercise of discretion in confirming a sale.

■ The referee should have granted to the unsecured creditors an opportunity to examine the contract of sale and have given them a reasonable time to be heard with reference to its confirmation. There is nothing in the record justifying or excusing his failure to do so. Not only that, but since the propriety of the sale was questioned, the evidentiary basis for the order confirming the sale of these properties should have been established with care. They had once been sold for $450,000, and the estate had received $100,000. It had not been determined whether that amount could be retained by the trustee or not. The fairness of a resale of the properties might well have a bearing upon that question. The former bid of the same purchaser (Stern Brothers Investment Company) had been $405,000. The appraised value was nearly $800,000. The trustee's valuation at the time of sale was apparently $538,000. In January, 1933, a cash bid of $250,000 had been rejected. The actual amount of cash that the trustee was to receive was $271,000, and he was turning over not only all physical properties, but accounts receivable and securities of some considerable value in addition. Nearly $100,000 had been used for expenses of administration alone. The claims of secured creditors, at the time of the sale, were about $164,000, and the purchase price was sufficient to care for such claims in full. The unsecured creditors, therefore, were entirely dependent for the payment of their claims upon the amount received in excess of liens and were, hence, vitally interested in the price to be secured. The confirmation of this sale should only have been made after a fair hearing, and upon proof justifying the conclusion that the properties were being sold for all that could reasonably be obtained for them, that the trustee had acted freely and fairly in making the sale, and that it was for the best interests of all concerned that the sale should be consummated. We think that, under all the circumstances, it was an abuse of power to deny the unsecured creditors an opportunity to be heard fully upon the question of the approval of the sale. The integrity of judicial sales is as important as their stability.

The referee proclaims in his certificate upon review the fullness and fairness of the hearing upon confirmation, but he is not borne out by the record. Except for the files and records in the proceeding, the report of the trustee was the only evidence before him on February 8th that the sale was advantageous to the estate, and the trustee recommended it "upon the advice of his counsel." The referee may have had knowledge that this sale was the best that could be made, but, if that was a known fact, there was no reason why it should not have been established by evidence. The trustee was not even called to the stand and examined. It was his duty to justify the sale, and not that of the appellants to discredit it.

Our conclusion is that all parties interested in these appeals should be restored to the position which they occupied prior to the confirmation of the sale by the referee on Febru-

ary 8, 1933, which will necessitate a reversal of all the orders appealed from. This does not indicate our disapproval of the method of allocation of the proceeds of sale adopted by the referee, about which we express no opinion at this time and upon this record.

The motions to dismiss these appeals are denied. The orders appealed from are reversed. The cases are remanded, with directions that the appellants be given a full and fair opportunity to be heard upon the question of the confirmation of the sale to Stern Brothers Investment Company and upon any proposed allocation of the proceeds of any sale that is approved, and for such other proceedings as are not inconsistent with this opinion.