### KIMMEL et al. v. CROCKER.
#### No. 1105.

Circuit Court of Appeals, Tenth Circuit.
Sept. 5, 1934.

Charles Rooney, of Topeka, Kan., for appellants.

B. J. Lempeneau and Irwin Snattinger, both of Topeka, Kan. (Hugh T. Fisher, of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

## McDERMOTT, Circuit Judge.

The trustee in bankruptcy of the Kaw Packing Company offered its properties for sale under an order of the referee directing that bids be received either free from, or subject to, incumbrances.[1] Two bids were received. One of them was for $44,800 cash, free of incumbrances, made by J. V. Abrahams, president of the bankrupt. The other, made by appellants who are the general creditors, when deciphered, amounts to an offer of $10,000 in cash for the properties, less accounts receivable of the trustee, subject to liens, costs and certain indebtedness. Both bids exclude cash on hand and certain claims which the corporation asserts against former officers. The trustee accepted the bid of $44,800. The referee confirmed and the trial court approved. That ends the matter unless there was a clear abuse of discretion below. Currin v. Nourse (C. C. A. 8) 66 F.(2d) 137; In re Hagerstown Silk Co. (C. C. A. 4) 69 F.(2d) 790; Century Motor Truck Co. v. Noyes (C. C. A. 1) 18 F.(2d) 546; In re Wolke Lead Batteries Co. (C. C. A. 6) 294 F. 509; Remington on Bankruptcy, § 2568.

Appellants argue that the entire proceedings in the court below were conducted for the benefit of the mortgagee—to save it the expense of a foreclosure in the state court and to cut off the equity of redemption afforded by state statutes in force when the mortgage was made. We are told in the briefs that the trustee had accounts receivable of the value of $10,000, representing meats sold by the trustee to solvent merchants, and which were collected by the purchaser within a week or two of the sale. Such current accounts were included in Abrahams' bid and not in appellants. The conclusion is that Abrahams' bid was only for substantially the amount of the fixed liens of $33,444.63,[2] since the purchase of the trustee's accounts receivable amounted merely to swapping dollars. That Abrahams' bid, properly analyzed, is merely an offer to pay the incumbrances and the costs of administration, leaving nothing for appellants, who are all the general creditors. That appellants' bid is for $10,000 for the properties, exclusive of the accounts receivable, subject to incumbrances, and is therefore $10,000 better than the bid of Abrahams'. It is also pointed out that part of the counsel who purport to appear here for the trustee, are in fact attorneys for Abrahams and the mortgagee. Some color is lent to these contentions in the brief of appellee, who undertakes to defend the order assailed by suggesting that he and the referee took into consideration the securing of sufficient cash to pay the mortgagee; that the mortgagee had not consented to any sale which would not satisfy its mortgage in cash;[3] and a commendable civic, but hardly legal, reason for brushing aside the asserted rights of general creditors, to wit, to prevent additions to the ranks of the unemployed.

If the record substantiated the assertions of the briefs and argument, quite a dif-

---

[1] Van Huffel v. Harkelrode, 284 U. S. 225, 52 S. Ct. 115, 76 L. Ed. 256, 78 A. L. R. 453.

[2] Mortgage and state taxes, $20,216; federal processing tax, $13,228.63.

[3] A lienholder has no right to object to a sale subject to his lien. Remington on Bankruptcy, § 2575.

ferent case would be presented. It would clearly be an abuse of discretion to accept the lesser of two comparable bids. In re Williams (C. C. A. 4) 197 F. 1. Bankruptcy courts should not administer properties incumbered by undisputed liens, unless there is a reasonable probability of there being a surplus over the incumbrances for the unsecured creditors. Bushong v. Theard (C. C. A. 5) 37 F.(2d) 690; In re National Grain Corp. (C. C. A. 2) 9 F.(2d) 802; In re Gimbel (C. C. A. 5) 294 F. 883; In re Harralson (C. C. A. 8) 179 F. 490, 29 L. R. A. (N. S.) 737; In re Goldsmith (D. C. Tex.) 118 F. 763, 767; Dugan v. Logan, 229 Ky. 5, 16 S.W.(2d) 763, certiorari denied 280 U. S. 587, 50 S. Ct. 36, 74 L. Ed. 636; Remington on Bankruptcy, § 2583. The complications ensuing when a court of bankruptcy assumes to act for the sole purpose of foreclosing a mortgage, are well illustrated in Bonner v. Cannon (C. C. A. 10) 60 F.(2d) 228. Where there appears to be a substantial equity for the creditors, a bankruptcy court may sell free of liens, in order to realize on the equity; but it should not do so simply to accommodate the mortgagee.

But we cannot say, from this meager record, that the charges are true. While there is an appraisal of accounts receivable as of February 24, 1934, it does not appear that these include accounts receivable for products sold by the trustee, and it cannot include such accounts for products sold between the appraisement and the sale; there is nothing else in the record to establish either the face, the character, or the value, of the accounts turned over to the successful bidder. The burden is on appellants to establish abuse of discretion, and it is not carried by self-serving statements contained in the petition to review or in the briefs here. Abrahams' bid including the accounts, and appellants' bid excluding them, and their value being an unknown quantity, it is almost impossible to compare the bids.[4]

It is apparent, however, that Abrahams' bid will pay off all the liens, including the tax liens, and leave $11,400 plus whatever cash the trustee had accumulated, for expenses of administration and the general creditors. Appellants' bid is confusing. It purports to be for $58,466, made up of $10,000 cash and items "assuming" the processing tax, the state tax, the mortgage, the costs, and of the trustee "retaining" cash and accounts. The creditors, however, have not acquiesced in this "assumption," and such obligations remain a charge against the property or the bankrupt estate. If these assumptions were written into the bid to make it look larger than the other bid, it could have been made even more impressive by writing in an assumption of the national debt.

Eliminating these make-believe parts of the bid, what appellants really offer is $10,000 for the same properties, except accounts of the trustee, subject to liens, as Abrahams offered $44,800 for, free of liens. Abrahams offered $11,400 above the liens and appellants offered $10,000 subject to the liens. Abrahams bid for the trustee's accounts; appellants did not. Whether these accounts were worth the $1,400 difference in the bids, the record does not disclose. On the record before us, therefore, appellants have not made out their case.

There is another fatal flaw in appellants' position. They treat the processing tax of $13,228.63 as any other lien on property. The processing tax is a lien on the properties of the taxpayer,[5] but it is also entitled to priority over general creditors in any distribution made by the trustee in bankruptcy. 11 USCA § 104; New Jersey v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284; In re Darmont Coal Co. (C. C. A. 4) 46 F.(2d) 455; Robertson v. Goree (C. C. A. 5) 29 F.(2d) 261; Liberty Mut. Ins. Co. v. Johnson Shipyards Corp. (C. C. A. 2) 6 F.(2d) 752; City of Chattanooga v. Hill (C. C. A. 6) 139 F. 600, 3 Ann. Cas. 237. State taxes, and costs of administration, by the same statute, are also given priority.[6] So even if the trustee's accounts could be treated as cash, and were of the amount claimed by appellants in their brief, the trustee, under appellants' bid,

---

[4] The sketchy record here does not disclose when possession was given the purchaser, what accounts were turned over to him, or what bills of the trustee were then unpaid.

[5] The tax is levied by the Act of May 12, 1933, tit. 1, § 9, 48 Stat. 35 (7 USCA § 609). Section 19 (7 USCA § 619) brings forward the enforcement provisions of earlier acts, including those found in 26 USCA § 115, imposing a lien.

In re Baltimore Pearl Hominy Co. (C. C. A. 4) 5 F.(2d) 553.

[6] The section, as now amended, provides that the trustee shall not be required to pay real estate taxes in excess of the value of the interest therein passing to the bankrupt estate. The processing tax, although it may become a lien on real estate, is not a "tax assessed against real estate."

would have $10,000 in cash and $10,000 worth of accounts. From this $20,000 the trustee must pay the taxes before distributing anything to the general creditors. These taxes are more than $14,000, which would leave less than $6,000 for the general creditors and expense of administration while Abrahams' bid leaves $11,400 for the same purposes. True, the trustee might then have some sort of claim against appellants because the processing tax was paid out of funds in the hands of the trustee instead of out of the properties acquired by appellants, but there is nothing before us to indicate that such claim, if successfully pressed, would be worth the difference in the bids, or any part of such difference.

If appellants' bid had been made by a stranger to the proceeding, there could be little question that Abrahams' bid is the better for the general creditors. That appellants are the unsecured creditors puts a somewhat different light on the question, for if all the unsecured creditors prefer to put more of their own money into a concern with the hope of better salvage at the end, ordinarily their right to do so ought not to be denied because a mortgagee wants to use the bankruptcy court to cut off a statutory right of redemption. Unfortunately for appellants, their bid was not large enough to take care of claims given priority by the Act, and in that situation, the referee was justified in accepting the only bid sufficient to take care of such prior claims.

The order appealed from is affirmed.