**FIRST NAT. BANK OF ARDMORE, OKL.,
et al. v. BONNER et al.**

**BONNER v. FIRST NAT. BANK OF
ARDMORE, OKL., et al.
Nos. 1007 and 1017.**

Circuit Court of Appeals, Tenth Circuit.
Dec. 18, 1934.

140

Earl Q. Gray, John M. Poindexter, and Wm. G. Davisson, all of Ardmore, Okl., for appellants in No. 1007, appellees in No. 1017.

H. A. Ledbetter and H. E. Ledbetter, both of Ardmore, Okl., for W. M. Bonner.

R. Brett, of Ardmore, Okl., for Hal M. Cannon.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Equity Rule 75 (28 USCA § 723) prescribes the procedure for drawing onto the record a condensed statement of the trial proceedings. It contemplates one statement, and one only. If counsel cannot agree upon a fair condensation of the evidence, the trial court is empowered to direct a proper statement. This rule has been flagrantly violated here. There are six separate fragmentary statements of one trial, labeled "Supplemental Statement," "Amendment of Narrative Statement," "Additional and Corrective Statement," etc. Moreover the statements contain comment, argument, and italicized documents which very manifestly are not a narrative of what occurred at the trial, but are contentions of counsel. Such have no place in a condensed statement.

By this slovenly disregard of the rule, counsel have saved themselves a little work, but by shouldering that work onto the members of this court, they have caused us to expend a disproportionate amount of labor in trying to figure out what evidence was adduced at the trial and injected an element of uncertainty into what should be certain. Counsel know, and doubtless count upon, the reluctance of courts to punish clients for the derelictions of their counsel by dismissing appeals or assessing penalties. Barber Asphalt Paving Co. v. Standard, etc., Co., 275 U. S. 372, 48 S. Ct. 183, 72 L. Ed. 318. If our repeated admonitions continue to be disregarded, and drastic steps must be taken, counsel who are responsible should indemnify their clients for the consequences of their own neglect.

From this unsatisfactory record, and from the opinions on two former appeals (Cassidy v. Bonner (C. C. A.) 54 F.(2d) 234, and Bonner v. Cannon (C. C. A.) 60 F.

(2d) 228), we glean that in 1922 J. S. Mullen was adjudged a bankrupt, his estate consisting chiefly of mortgaged real estate. The Waddell Investment Company owned mortgages on many of the farms involved, and Bonner owned a second mortgage on many of the farms mortgaged to Waddell. The appellants in 1007 held liens on other lands. The lands were sold free of encumbrance, the liens attaching to the proceeds. Twelve years have elapsed; the bankruptcy proceeding is still open, and the appellants in 1007 have been denied the proceeds of their securities because of controversies in which they are not concerned. All of the unencumbered assets of the estate, and thousands of dollars more, have been dissipated because the bankruptcy court undertook to administer encumbered real estate when it must have been apparent there could be no surplus for the general creditors. This was done despite the unbroken line of authorities that it should not be done. Kimmel v. Crocker (C. C. A. 10) 72 F.(2d) 599, and the many cases there cited. Despite the fact that their compensation depends upon the amount of moneys disbursed by them, referees should resist the importunities of mortgagees who desire to cut off rights of redemption, and should decline to administer encumbered properties unless there is a real prospect of a surplus for general creditors. With this general background, we proceed to the three questions presented on these two appeals.

### Appeal In No. 1007.

The trustee deposited proceeds of all sales in one bank account, without earmarking the funds. It is assumed that he kept books, at least sufficient to enable him to keep track of the proceeds which were impressed with liens in favor of different mortgagees. The fact that all the moneys of the estate were in one account at the bank is no justification for displacing a lien of a mortgagee on the proceeds of his security in favor of another mortgagee of other real estate, or for using the funds of one mortgagee to pay expenses or losses connected with a controversy over lands in which such mortgagee had no shadow of interest or claim. Yet that is the result of the order appealed from.

Bonner and one Cassidy were in a controversy over priority of liens on two pieces of real estate—a controversy in which these appellants had not the slightest concern. On December 16, 1925, at a general meeting of the creditors, Bonner and Cassidy agreed that Cassidy had a prior lien as to one tract, and that the referee might make an order to that effect. The referee, now dead, evidently understood that the agreement covered both tracts; at any rate, he signed a written order directing the trustee to draw his warrants in favor of Cassidy for $3,973.-12 and "please issue at once and forward to me to be countersigned and delivered." The trustee did as directed; the warrants were issued, countersigned and delivered to Cassidy.

Some time prior to March 2, 1926, the mistake of the referee was discovered; on that date Bonner filed a petition with the referee setting out that $2,329.89 had been paid Cassidy by mistake, and asking that "the referee make an order directing the said W. J. Cassidy to pay back into the hands of the trustee, and on final hearing that said funds be directed to be paid to the said W. M. Bonner." The referee, after a full hearing, decided that Bonner's lien was prior, and also granted Bonner's petition of March 2, viz.—"the said W. J. Cassidy is ordered and directed to forthwith return all funds to H. M. Cannon, Trustee, which he received from the said H. M. Cannon, Trustee, under said order from the sale of the above described property * * * that the trustee herein, H. M. Cannon, be, and he is hereby directed to turn over the said sum of $2329.89, the amount received from the sale of said property."

That order was affirmed by this court (Cassidy v. Bonner, 54 F.(2d) 234) and is final.

Efforts to collect the sum from Cassidy or the sureties on his supersedeas bond having failed, Bonner then asked that the trustee pay such sum of $2329.89 to Bonner, either personally or from other funds of the estate. The order now appealed from was entered pursuant to that request, and directs that this sum be credited to Bonner in his accounts with Cannon, the trustee. The effect of this order is that this loss, occasioned by a bona fide mistake of the referee, is saddled upon appellants who are strangers to the controversy and in no way responsible for the loss. This is clearly erroneous.

In the first place it is an impeachment and modification of the order of March 24, 1926, affirmed by this court and final. That order granted the petition of Bonner and was the proper method of rectifying the mistake as far as it could be. It ordered Cassidy to "forthwith return" the sum received from Cannon and directed Cannon to turn over "the said sum of $2329.89, the amount received from the sale of said property."

That order is clear, correct, and final. Bonner had a lien on a specific fund; it had found its way by mistake to Cassidy; Cassidy was directed to return it to Cannon, whereupon Cannon was directed to turn it over to Bonner. To convert that lien on a specific fund into a general claim against the estate, is to amend and modify an order which has become final.

The Special Master, appointed in the present case, seemed to be of opinion that the order of the referee to the trustee to pay Cassidy was void because Bonner and his counsel testified they had stepped out of the hearing room when the order was made. The controversy was pending before the referee; Bonner and his counsel were present at a general meeting of the creditors; the referee was advised a settlement had been made as to one tract, and his jurisdiction was specifically invoked by a request to enter an order by agreement. Jurisdiction includes the power to err. Jack v. Hood (C. C. A. 10) 39 F.(2d) 594. Jurisdiction is not lost whenever a litigant or his counsel leave the court room. It is also suggested that Bonner has been diligent to recoup his loss, while appellants did nothing. It was not their loss, and they had no call to act until an effort was made to compel them to stand it; since then they have acted diligently.

The referee, with jurisdiction over the controversy, entered an order inadvertently but in good faith. The trustee in good faith obeyed it. He had no other recourse. Neither the trustee personally, nor other funds in the estate are liable for this loss. Bonner is entitled to just what he asked for on March 2, 1926, and which the referee ordered on March 24, 1926, and which this court affirmed, and no more,—if Cassidy or his sureties return this money to Cannon, Bonner is entitled to it. If not, Bonner must stand the loss, it being occasioned by a mistake made in good faith by the referee in the discharge of his judicial duties. Bonner, at his own expense, is entitled to the best efforts of the trustee to recover from Cassidy or his bondsmen. Under no circumstances can the other creditors be required to stand any part of this loss.

### Appeal In No. 1017.

#### (a) Sales Costs.

This controversy was before this court in Bonner v. Cannon, 60 F.(2d) 228. We there held that there should be deducted from the proceeds of the sales of tracts of land, before accounting to the lienholders, the fees of the trustee and referee, including statutory commissions, and a fee for the trustee's attorney of two and a half per cent. of the sale price, such items being expressly reserved in the order of sale. We held that prior taxes were properly deducted because they were a prior lien[1] and because they had been deducted by agreement. On the meager record then before us this court was unable to approve a deduction for abstracts of title and certain other items of cost connected with the sale. Unwilling finally to adjudicate these items on such a meager record, the case was remanded for further proceedings. Upon remand, the transactions were fully explored before a Special Master; from the condensed statement of the evidence, the findings of the Master and of the trial court, it appears that:

"The general plan of liquidation of the estate of the bankrupt has been that the costs and expenses, including title expense and abstract bills, chargeable against each tract should be paid out of the proceeds of the sale of that tract. All creditors participating and all parties now involved in this appeal were parties to this arrangement, acquiescing therein, and allowed their security to be sold and handled in that manner. Where the creditor was the purchaser, he customarily paid the costs and expenses chargeable to his security in cash and the balance of his bid was credited upon his debt."

Bonner does not dispute this. He testified:

"I have no objection to paying the expenses agreed upon where I was liable where I had the first mortgage. Where I had a first mortgage I consider I was liable for the referee and trustee expenses and also the expense of the abstract, the giving of notice and other necessary expense was all I agreed upon. I agreed to it along with the rest of them. Where I had a first lien the trustee's 1% commission, the referee's commission, the percentage to the attorneys for the trustee, the abstract expense and pro rata part of the general expense were all paid. It was my understanding that I was to pay these items in a proper case where I had a first lien."

On the lands on which Waddell held the first mortgage and Bonner the second, an

---

[1] Section 12723, Okl. St. 1931; Board of Com'rs of Woods County v. State, 125 Okl. 287, 257 P. 778, 53 A. L. R. 1128.

oral agreement to stifle bidding at the trustee's sale was entered into between Waddell and Bonner, by which it was agreed that bids made either by Waddell or Bonner should be treated as Bonner's bids and the sales confirmed to Bonner, which was done; Bonner in turn agreed that all lands so bid in should be subject to the Waddell lien. The Special Master summarized the written contract, later made in confirmation of the oral agreement, as follows:

"If we analyze the above agreement, which the testimony shows was made during a lull in the bidding and later reduced to writing, we find that by this instrument Bonner agreed to pay all the indebtedness against each tract, regardless of the bid he made. By this bid he took the Waddell Investment Company out of the bidding. This company was primarily liable for these costs and expenses, and Bonner knew that the costs would be deducted from the amount of his bid. Yet, knowing that, he assumed all the debts and thereby let them escape paying these costs through that method."

Bonner accordingly bid in these lands without competition from Waddell and satisfied his bids by canceling the indebtedness against the land. The sale notice, which conferred the privilege of crediting indebtedness on the bid, required a ten per cent cash payment. Bonner did not pay this, but procured possession of the trustee's deeds upon the express promise to pay these costs. The Special Master's finding is:

"In addition to the above, R. S. Gardenhire, the clerk in charge of the office of the Trustee, testified that Bonner agreed to pay up these costs. This question was asked him:

" 'Q. How does it happen, Mr. Gardenhire, that the Trustee issued deeds on the Waddell Tracts without requiring the payment of the costs?

" 'A. Well, in all cases except tracts purchased by Bonner lands have been paid for; tracts purchased by Bonner—he had some litigation over some rents and he said as soon as settlement was made, he would pay for them; said as soon as settled, he was ready to come in and pay off.'

"He lost his litigation over these rents before the Referee and in this court now he is throwing off on this clerk, whom he was able to persuade to overstep his legal duty and deliver him deed to these lands, without either paying his bid or putting up the ten per cent as guaranty of good faith to the court.

"Hal M. Cannon, Trustee, also testified that Bonner agreed to pay these taxes and court expenses and assured him that there would be no trouble over these expenses."

After Bonner got possession of the deeds, he then refused to pay the costs of the sale on such eight tracts, asserting that such costs should be taxed either to Waddell or paid from the general estate.

Bonner's contention, as we understand it, is that he is not liable for costs of sale of tracts of land purchased by him where he held a second mortgage, but that such costs should be assessed against the first mortgagee, and if not paid by him, then paid by the other creditors. We cannot accede to any such untenable distinction. Bonner bid at the sale knowing that the costs of sale of a particular tract must be paid from the sale price of such tract, and be paid in cash by the successful bidder if he elected to discharge his bid by crediting the amount of liens thereon; and it makes not the slightest difference if the bidder used his own liens, or those of another, in so discharging his bid. Here again, such costs must come from the tract of land sold or be paid by mortgagees on other tracts of land, to be later collected from Waddell if they can. Bonner took Waddell out of the bidding, foreclosed his own second mortgages, has had all the benefits of the expense of administering these lands on which he held liens, and he ought to pay the expenses incurred for his use. It does not impeach the order of sale to require a bidder to pay costs of sale which he agreed to pay as a part of his bid, and again agreed to pay when he procured possession of his deeds. The order of sale itself did not authorize liens to be applied on the bids; that was contained in the notice of sale which required a ten per cent deposit in cash to defray the costs.

■ The Special Master and the trial court charged Bonner with the referee's and trustee's commission, the attorneys' fees and the taxes, in strict accord with our opinion on the first appeal. But the cost of abstracts of title, publication notices and appraisal, of lands sold to Bonner and on which he held a mortgage, were not charged to Bonner, except as he was directed to pay them out of any moneys in his hands belonging to Waddell. Both the Special Master and the trial court said that the result was unjust, but they felt bound to so order because of our opinion on the first appeal. We do not construe that opinion to release Bonner from any agreements he made which were not disclosed by that record. We remanded the

case so that the facts could be explored. Upon those facts, we agree with the Special Master and the trial court that Bonner should pay these items, amounting to $425.88. He should not be charged with an item of $801.00 paid out for a deed to clear the title on one tract, unless he authorized or agreed to the payment. The plan of liquidation did not contemplate such unusual expenditures, and the record discloses no authority in the trustee to expend such sum; the evidence is in·dispute as to Bonner having authorized the expenditure, and the lower court not finding such authority, he cannot be charged therewith.

(b) Trustee's extra 1% commission.

Section 48e of the Bankruptcy Act, 11 US CA § 76(e), authorizes the court to allow a limited additional commission to an operating trustee. On December 1, 1922, the referee directed the trustee to operate the 25,000 acres of land in the estate. In 1925, Cannon, the trustee, filed a verified petition for an additional allowance within the limits fixed by the statute, in which he sets out generally the work involved in operating the properties. The District Judge referred the petition to the referee. The petition came on for hearing at a regular meeting of the creditors on November 28, 1925, of which Bonner had notice. The referee granted the petition, and his order recites that all "creditors at said meeting agreed" to the additional compensation. Again Bonner and Ledbetter testify that they were not present when this order was made, but the evidence most likely to be true is to the contrary, and we accept the trial court's finding, that, "I find that Bonner's attorney H. A. Ledbetter was present when this order was made on Nov. 28, 1925; * * * To sit by and wait until the officer is dead who makes this solemn recital that all the creditors agreed to this 1% additional assessment, and to permit all these reports to be made, and then after the referee is dead to come in and file this answer and challenge this, under laches if nothing else should estop them."

■ On January 20, 1926, in open court, the order of the referee was approved by the trial judge. Bonner and his counsel were as much or more interested and active in this estate than any other creditor; Bonner himself testified he was "at practically every hearing in the Mullen bankruptcy estate"; nevertheless again they testify they were not in court when the order was made. But jurisdiction attaches on due notice and is not contingent upon actual presence when the hearing is held and an order is made.

■ No appeal was taken from this order until January 1, 1934, eight years after it was made and after the trustee had performed the services in reliance upon it. Bonner concedes he knew of the order early in 1926. The additional allowance was in the trustee's report of June, 1926, upon which a full hearing was had in June, 1926, before the court, at which Bonner and his counsel were present. An appeal to the Court of Appeals was taken from the order made on that report, and the appeal later dismissed. Shawnee State Bank v. Cannon (C. C. A. 10) 49 F.(2d) 1084. The additional compensation may not have been assigned as error on that appeal, but it was in the account under attack, and if Bonner was dissatisfied, then was the time to object. The additional compensation has been paid; Bonner alone, of all the creditors, now objects.

A mere statement of the facts demonstrates that Bonner's appeal in this regard is devoid of merit either from a technical or equitable standpoint. With specific power to grant additional compensation, it was allowed at a meeting of which Bonner had notice, which his counsel attended, and where he agreed to the order. He did not appeal then, although the charge was in an account from which an appeal was lodged in 1926. For eight years he has stood by, accepting the trustee's services rendered on the faith of a court order, and now wants his money back. He now contends there was a technical failure to comply with General Order 42 (11 USCA § 53), promulgated a few months before this allowance was made, in that Cannon's claim was not referred to in the notice to the creditors. That General Order requires a detailed statement of "services rendered" when claim is made therefor; Cannon's application was for additional compensation for services to be rendered. Such a claim may be within the spirit of the order, and it would be advisable to notify creditors of such applications, but failure so to do cannot be availed of by a creditor who was present and agreed to it; and such irregularity must be corrected by direct proceedings and not by collateral attack. .Petition of Baxter (C. C. A. 6) 269 F. 344; In re Ives (C. C. A. 6) 113 F. 911.

Conclusion

■ These two appeals challenge the balance struck by the lower court in the ac-

count between Bonner and Cannon. The item of costs of sale was not made the subject of a separate appeal. But both parties have appealed from the balance struck by the trial court. We are reluctant to believe that this court, trying the matter de novo on an equity appeal, is powerless to correct an item in that account, particularly where the error occurred by reason of a misconstruction of our opinion on the former appeal. We conceive it to be our duty to direct the correct balance of such account.

█ Furthermore, as stated by Judge Williams, this case should be closed some time. Twelve years in a court of bankruptcy is too long. In any event, disbursement to creditors with liens on specific funds should not be delayed because of the existence of controversies as to other funds in which they have no interest.

The order will be that the account, as stated by the trial court, be modified by striking out the credit to Bonner of $2,329.-89, and by adding to the charges to Bonner, the sum of $425.88. Otherwise, the order appealed from is affirmed.

The costs of both appeals, and the costs of the proceeding below, are taxed against Bonner.

Modified and affirmed.