**FREEMAN FURNITURE FACTORIES,
Inc., v. BOWLDS et al.**

**In re AMES CORPORATION.**

**No. 9256.**

Circuit Court of Appeals, Sixth Circuit.

April 23, 1943.

Lawrence Kasakoff, of Chicago, Ill. (Claude E. Smith, of Owensboro, Ky., and Lewis E. Pennish and Harry P. Kishner, both of Chicago, Ill., on the brief), for appellant.

R. Miller Holland, of Owensboro, Ky., and Malcolm P. Wallace, of Louisville, Ky. (R. Miller Holland, Morton Holbrook, E. B. Anderson, and C. William Wells, Jr., all of Owensboro, Ky., on the brief), for appellees.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

138

ALLEN, Circuit Judge.

This appeal arises out of an order of the District Court approving the sale of a bankrupt estate, adjudging a claim in favor of appellant in the amount of a state court judgment against the bankrupt, and finding the lien thereof inferior to the cost of preserving the estate, costs of reorganization, costs of bankruptcy, and taxes.

Appellant's principal contentions are that the bankruptcy court was not authorized to sell the bankrupt's assets free and clear of liens; that appellant's judgment is a statutory lien entitled to be paid first from the proceeds of the real estate encumbered by the lien, and that appellant was the high bidder for the property at the sale. Other questions based upon the alleged priority of appellant's lien upon the ground that it arose out of wage claims and was hence preferred under sections 2487, 2488, 2490 and 2491 of Carroll's Kentucky Statutes, and under section 64, sub. a(2), of the Bankruptcy Act, Title 11 U.S.C. section 104, sub. a(2), 11 U.S.C.A. § 104, sub. a(2), were abandoned at the hearing in this court, but reasserted in a brief subsequently filed by appellant.

The case arises out of the following facts: For many years the Ames Corporation, bankrupt, had been engaged in the manufacture of furniture. From January, 1937, until· February, 1940, the bankrupt's chief business was the manufacturing of furniture for appellant under a contract whereby appellant furnished materials to the bankrupt for processing, paying for the completed product less the value of the materials. Appellant rented a room at the bankrupt's plant for one dollar a year, and as soon as furniture was manufactured it was stamped with appellant's name and either shipped to appellant or placed in this room, called a warehouse. While the accounts between the parties fluctuated in amount, customarily appellant sent a check to the bankrupt each week in part payment of its account for furniture shipped. These checks enabled the bankrupt to meet its weekly payroll.

Prior to bankruptcy the bankrupt had been in acute financial difficulties over a period of months, having defaulted in payment of all or part of its state, county, school district and federal taxes. Appellant was advised of this fact. The Bank of Owensboro was unwilling to make further loans to the bankrupt in the early part of 1940. The bankrupt's financial difficulties had been repeatedly discussed with appellant beginning in the fall of 1939, and appellant had been given a statement in January, 1940, showing that the bankrupt's indebtedness was between $60,000 and $80,000. At that time the bankrupt asked appellant for financial assistance. In February, 1940, instead of sending its weekly checks to the bankrupt, appellant delivered pay checks to the employees of the bankrupt, taking from them assignments of wages for the period from January 16 to February 15, 1940. The assignments totaled $6,689.57, and the wages paid by appellant were credited to it in that amount on the books of the bankrupt. Also the bankrupt wrote a letter, the form of which was dictated by appellant, acknowledging this amount as a debt and promising repayment. The books of the bankrupt, giving due credit to this item of wages paid, showed that the balance due the appellant from the bankrupt as of May 31, 1940, was $4,819.11. This testimony was not controverted by any substantial evidence, no books or statements being submitted by appellant to contradict the bankrupt's evidence as to the status of the account. Decision before the referee was postponed in order to give appellant opportunity to rebut this proof. Six weeks after the extension expired the depositions of appellant's treasurer and assistant secretary were filed. The assistant secretary says that work ceased in February because of the financial difficulties of the bankrupt. The treasurer states that in December, 1939, the bankrupt's president came to Chicago and showed appellant a statement of its financial affairs, and that the payments to the bankrupt's employees and the taking of the wage assignments were made because the bankrupt's superintendent told appellant he could not meet the payroll. The depositions show that the following facts are uncontroverted:

(1) That the bankrupt was insolvent at the time of the taking of the wage assignments;

(2) That appellant had reason to believe the bankrupt was insolvent and in contemplation of bankruptcy; and

(3) That appellant had an admitted desire to create a preference for itself. Title 11 U.S.C. section 96, sub. a, 11 U.S.C.A. § 96, sub. a.

The wage assignments were the basis of the judgment secured by appellant in the Circuit Court for Daviess County, Kentucky, May 21, 1941, in the amount of $6,-

411.93. Appellant filed an equity action in the state court to enforce its statutory lien arising out of the wage claims upon March 28, 1940. A judgment was taken by default in the state court and sale of appellant's real and personal property was ordered. The trustee in bankruptcy was later made a party to the state court proceedings and the case was reopened, but the trustee entered no appearance and made no defense to the action. A second judgment was entered by the state court fastening a lien under sections 2487–2491, Carroll's Kentucky Statutes, upon all real property and equipment of the bankrupt. It is upon this judgment that the claim of appellant here is founded.

It is difficult to understand the inaction of the trustee in the state court, as it is uncontroverted on this record that the bankrupt actually owed appellant not $6,411.93, as claimed in the state court, but $4,819.11. Certain of the wage claims, if valid in other respects, were invalid under the Kentucky statute, because they do not fall within the definition of employees therein established. Carroll's Kentucky Statutes, section 2488.

The claim was contested in the bankruptcy court, in the reorganization proceedings hereafter described. While the referee filed no formal findings of fact, he found in effect that the Ames Corporation, together with all its facilities and employees, was for several years before its bankruptcy employed in the exclusive service of the appellant, working for it and being directed through its agent or agents who supervised and controlled all of the operations of the bankrupt with the exception of some small services rendered by the bankrupt to others, that the appellant furnished the materials with which the factory operated and paid the employees who were working for it exclusively, and that the money paid by appellant for the assignments was expended for the sole purpose of procuring the services of the bankrupt in the manufacture of the materials theretofore delivered. The referee therefore sustained the trustee's exception to appellant's claim.

The referee also decided that the assignments were invalid because they were, in numerous respects, not executed in conformity with the mandatory provisions of the Kentucky statutes as to assignments of wage claims. Sections 4758a-1, 2, 3, 4, Carroll's Kentucky Statutes.

Reorganization proceedings under the Bankruptcy Act were instituted March 29, 1940, the day following the filing of the suit in the state court. The trustee reported his inability to submit any plan of reorganization and on December 20, 1940, the bankrupt prayed for an order adjudicating it a bankrupt. On January 2, 1941, appellant and others filed a petition praying to have the Ames Corporation adjudged an involuntary bankrupt, but the court entered the adjudication in accordance with the voluntary petition. Appellant then filed its proof of claim based upon the judgment in the Daviess County Circuit Court. The trustee in bankruptcy subsequently filed a petition asking leave to sell the bankrupt's property. The assets had been appraised at approximately $70,000. Over objections of appellant a sale was had in which all of the assets were sold to the Earle L. Hart Woodworking Machine Company for the sum of $25,350, free and clear of all liens and encumbrances, the liens and encumbrances to attach to the proceeds of sale. Appellant excepted to and sought a review of the referee's order of sale, claiming that its bid exceeded the Hart bid by $1,189.57. The referee overruled appellant's exceptions and allowed its claim in the amount of $4,819.11 as a general claim. The District Court in general sustained the referee, but reversed the order as to appellant's claim against the estate, adjudging a lien in the amount of $6,411.93 in favor of appellant pursuant to the state court decree, but inferior to costs and taxes.

■ We do not discuss at length the contention that appellant was the highest bidder at the sale. The referee and the District Court found upon this question of fact that the Hart bid was over $800 higher; that the itemization of appellant's bid was based not only upon incorrect figures, but also included an item of $1,500 which the bid in terms had expressly excluded. The concurrent findings of the court and referee are binding upon us in absence of clear mistake, and in addition are amply supported by the evidence.

■ If it were not for the interposition of the judgment in the Daviess County Court, the order of the referee granting appellant only a general claim in the amount of $4,819.11 would necessarily be affirmed, for the uncontroverted facts as above set forth show that this was the amount owing to the appellant, and that the assignments

140

of wages were not executed in conformity to the Kentucky statute and were perhaps invalid for other reasons; but the trustee, although served with summons, neither contested the validity of the assignments in the state court nor offered any defense to the action. Hence the judgment is binding here. Spears v. Akers, 6 Cir., 31 F.2d 750. Cf. Fischer v. Pauline Oil & Gas Co., 309 U.S. 294, 303, 60 S.Ct. 535, 84 L.Ed. 764.

However, the District Court did not err in ordering a sale free and clear of liens, over the protest of appellant. Cf. Federal Land Bank of Baltimore v. Kurtz, 4 Cir., 70 F.2d 46; Hoehn v. McIntosh, 6 Cir., 110 F.2d 199; Van Huffel v. Harkelrode, 284 U.S. 225, 227, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453. The bankruptcy court may sell encumbered property free of liens where there is a reasonable probability that the property will bring enough in excess of the secured claims to enable the general creditors to receive some payment. Kimmel v. Crocker, 10 Cir., 72 F.2d 599; In re King, D.C.W.Va., 46 F.2d 112. This was a matter addressed to the sound discretion of the court, and no abuse of discretion is revealed. In view of the appraisal, the referee was justified in believing that the property would realize considerably more than the lien claims. While the liens now appear to total more than $30,000, none of the tax liens, which aggregate more than $13,000, had been claimed at the time of the sale in 1941.

Nor is appellant's lien, under Kentucky law, superior to the lien of the state and municipal authorities. Appellant's proof of claim asked for a first lien "inferior only to tax liens." Its petition filed in the Daviess County Court prayed that it be adjudged a first lien "inferior only to the lien of defendants, City of Owensboro, Commonwealth of Kentucky and Daviess County. * * *" The court refused to adjudge to appellant a first and paramount lien on the properties and the judgment contains an exception "to so much of this judgment as does not adjudge plaintiff [appellant] a first, superior and paramount lien inferior only to the liens of defendants, City of Owensboro, Commonwealth of Kentucky, and Daviess County, for taxes." Appellant did not claim a lien superior to the taxing authorities, and the judgment upon which appellant's claim here is based did not grant such a lien. Under Kentucky law its lien was not entitled to priority over

taxes. Sections 4257a-7 and 4021 of the Kentucky Statutes, Baldwin's 1941 Supplement, provide that the Commonwealth's lien has "priority over any other obligation or liability for which the property is liable. The lien or liens of any city, county, town, or taxing district shall be of equal dignity to that of the Commonwealth. * * *" The assessments for street improvements owing to the city of Owensboro under the statutes are liens on the abutting property and "take precedence over all other liens * * * except state and county taxes, general municipal taxes and prior improvement taxes." The general municipal taxes constitute a prior lien under section 4021, Kentucky Statutes, and also under section 3375, Kentucky Statutes, "which shall not be defeated by gift, devise, sale, alienation, or any means whatever * * *."

However, under the federal statute, section 64, sub. a(2), Title 11 U.S.C. section 104, sub. a(2), 11 U.S.C.A. § 104, sub. a(2), wage claims under $600 are given a priority over taxes. This section covers only claims due to "workmen, servants, clerks, or traveling or city salesmen * * *." Of the 135 claims filed in the state court and in the bankruptcy proceedings, the record does not show which claims fall within the class protected by section 104, sub. a(2). Plainly the president, the production manager and the superintendent and the foremen do not fall within the statutory class, and no testimony was given as to the character of work done by the other claimants. The burden was on appellant to show which of the 135 claims fall within the definition of section 104, sub. a (2). Hence the District Court did not err in denying priority to the alleged wage claims under section 64, sub. a(2).

It was not error to deny to appellant's claim priority over the various costs of administration, which are clearly given priority under section 64, sub. a(1) [Title 11, U.S.C. section 104, sub. a(1), 11 U.S.C.A. § 104, sub. a(1)]. The decisions relied on by appellant to support a contrary holding have no application here, where there is no general fund for the benefit of the estate.

Appellant invoked the bankruptcy jurisdiction when it joined in filing a petition praying for involuntary bankruptcy and sought to avail itself of the administrative functions of the court to realize on its security. It participated in the proceedings and bidding at the sale. There was a rea-

sonable expectation that the proceeds of sale would pay the lien in full and leave a substantial balance. To determine this question it was necessary that the property be sold, and to accomplish this appellant had the benefit of the services of the trustee and his counsel. Proper orders looking to the sale of the property had to be drawn and presented and the property had to be preserved pending the sale. These things were for the benefit of the appellant as well as other creditors who invoked the aid of the court for the collection of claims, and the costs were properly chargeable to it. In re Louisville Storage Co., D.C., 21 F. Supp. 897, affirmed, 6 Cir., 93 F.2d 1008; Virginia Securities Corp. v. Patrick Orchards, Inc., 4 Cir., 20 F.2d 78. Cf. First Nat. Bank of Ardmore, Okl., v. Bonner, 10 Cir., 74 F.2d 139; Robinson v. Dickey, 3 Cir., 36 F.2d 147.

The order of the District Court is affirmed.