## MORTGAGE LOAN CO. et al. v. LIVINGSTON.

## LIVINGSTON v. MORTGAGE LOAN CO. et al.

### No. 9695.

Circuit Court of Appeals, Eighth Circuit. July 3, 1933.

Rehearing Denied Aug. 14, 1933.

Paul Bakewell, Jr., of St. Louis, Mo., for Mortgage Loan Co. and others.

Harry A. Frank, of St. Louis, Mo., for Orville Livingston.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

There are here two appeals from the decree of the lower court making distribution of funds in the hands of the trustee in bankruptcy of the Buckingham Realty Company. The case was before us on a former appeal. Mortgage Loan Company et al. v. Livingston et al., 45 F.(2d) 28.

The Mortgage Loan Company was the owner of a second mortgage covering property of the Buckingham Realty Company known in the record as the Buckingham Hotel Property, in the city of St. Louis, Mo. Proceedings were pending for the foreclosure of this mortgage, when, on June 27, 1927, the mortgagor, the Buckingham Realty Company, was placed in bankruptcy, and its property, including that covered by this mortgage, was taken over by a receiver and the

foreclosure proceedings enjoined. Immediately upon the appointment of the receiver, counsel for the Mortgage Loan Company advised the receiver by letter of the defaults existing in its mortgage and of certain provisions of the mortgage to the effect that the "trustee (named in the mortgage) shall be entitled to immediate possession of the property * * * and shall have the right to control, manage, and operate the same, and collect the revenues therefrom, and after the deduction of expenses incidental thereto shall apply the revenue therefrom to the payment of that portion of the debt then in default, or for the purpose of securing the performance of the obligations then in default." The letter then advises the receiver that the revenues of the hotel should be applied in making good the existing defaults under the mortgages, and to the payment of the principal and interest of the mortgage debts. The letter calls the receiver's attention to the fact that in the past the revenues have been used for other purposes in connection with the affairs of the Buckingham Realty Company, "and that the accounts of the Buckingham Hotel and the Buckingham Annex have been intermingled, with the result that frequently the earnings from the Buckingham Hotel, which are subject to the mortgages above described, have been used to pay the operating expenses and carrying charges of the Buckingham Annex. In view of the existing defaults under the mortgages, such a procedure violates the contract rights of the mortgagees. To insure the protection of those rights, I therefore request that in your conduct of the affairs of the Buckingham Realty Company, as its receiver, you segregate the revenue from the Buckingham Hotel and the revenue from the Annex, or any other properties, and apply all such revenues to the curing of the existing defaults and to the payment of the principle and interest of these mortgage debts as they accrue." The receiver answered this communication, and advised that the request that the accounts of the Buckingham Hotel, main building, and the annex be kept separately, met with his approval, and that he would proceed accordingly.

On September 15, 1927, the Mortgage Loan Company filed petition for leave to foreclose its mortgage. This petition was denied without prejudice on October 1st. On December 3d still another application was made and denied, but on December 17, 1927, leave to foreclose was granted. The total amount due on this second mortgage at the date of foreclosure sale was $85,806.34, which amount included, among other items, taxes and interest paid by the Mortgage Loan Company. At the foreclosure sale the property was purchased on behalf of the mortgagee for $50,000, leaving a deficit of over $35,000.

On March 26, 1928, the Mortgage Loan Company filed petition for an order directing the receiver to pay it the sum of $27,480.56, after deducting therefrom whatever allowance might be made by the court to the receiver for his services, and to turn over to it the accounts receivable described in its petition in the sum of $5,496.56, so that the same might be applied to its mortgage debt and the interest accruing thereon, and on account of advances made for taxes accrued and paid while the property was in the possession of the receiver. This petition was heard on May 5, 1928, and on January 19, 1929, the court entered its order denying the petition, but ordering the receiver to pay petitioner $5,711.47 on account of taxes and insurance on the property for the period from June 29, 1927, to January 16, 1928, during which time the property was in the possession of, and was being operated by, the receiver, the court holding that the Mortgage Loan Company, as the owner of the second mortgage, was not entitled to the rents and profits accruing from the mortgaged property because it had not taken possession of the property until January 16, 1928, and that all the rents and profits had accrued prior to that date, and that the mortgagee had not asked for a receiver, nor demanded possession of the property. It was an appeal from this order which was before us on the former appeal. We reversed the lower court and remanded the cause for further proceedings not inconsistent with the opinion.

When the mandate went down to the lower court, the Mortgage Loan Company filed a motion in which it is recited "that after the payment of the fees of the receiver and his counsel and all other expenses, there remain in the hands of the receiver the following funds and accounts derived from the operation of the Buckingham Hotel, main building, during the period from June 29, 1927, to January 16, 1928, to-wit, the sum of $20,268.25 in cash, and accounts receivable aggregating $5,405.80, which accounts receivable are due from guests of the said Hotel," and praying for an order authorizing and directing the receiver to turn over and deliver to the Mortgage Loan Company these funds and accounts. Thereafter the trustee in bankruptcy filed a motion, which, after re-

citing in a general way the proceedings theretofore had in the lower court and the reversal of the order of the lower court by this court, with the direction that the cause be remanded for further proceedings not inconsistent with the opinion, recites that "in accordance with the report of the receiver heretofore filed herein the cash balance on hand with reference to the Buckingham (main) Hotel account was shown as $27,480.56, and also certain accounts receivable aggregating $5,496.56, all of which was claimed by said petitioners, Mortgage Loan Company and Repps B. Goodson, less allowance to the receiver for his services, as rents and issues of said property"; recites that the said amount so claimed does not constitute rents and issues covered by the mortgage; that from the time the receiver took charge, June 29, 1927, until July 14, 1927, the receiver did not keep separate accounts of the receipts of the main hotel and the annex, and that certain receipts from the annex were absorbed and reflected in the balance shown in the cash balance of the main hotel account on January 18, 1928, and that the receiver during the operation of the hotel, after he had kept separate accounts, improperly transferred certain sums from the annex hotel account to the main Buckingham Hotel account, the said various improper transfers being alleged to amount in the aggregate to $13,679.68. The trustee then asked that the motion of the Mortgage Loan Company, together with his own motion, be set down for hearing, and that the court determine the issues.

On hearing of these motions, the court granted the motion of the trustee to set the cause down for further proceedings, and appointed a special master "to make an accounting and to analyze the report of the receiver and to hear evidence thereon, if necessary, and to segregate such moneys or funds as were derived or came from the mortgaged property sources and such moneys or funds as were derived or came from unmortgaged property sources." Pursuant to this appointment, and over the protest and objection of the Mortgage Loan Company that the court was without jurisdiction to enter upon such a hearing, and that such hearing was not warranted by the opinion and mandate of this court, the special master proceeded to take testimony offered by the trustee, no testimony being offered by the Mortgage Loan Company, and submitted a written report which occupies some forty pages of the printed record. In that report it is recited that: "In the record on appeal to the Court of Appeals only parts of the Receiver's report are included. An examination of these parts of the Receiver's Report (pp. 54, et seq. of the printed record) will clearly disclose why the Court of Appeals was led to believe the cash balance of $27,480.56 as shown by the Receiver in his report correctly represented net result of his operations of the Buckingham Main Hotel property. These parts of the report show nothing other than his receipts and disbursements as Receiver of the Buckingham Main Hotel. They do not show that the Receiver included in the receipts of the Buckingham Main Hotel a great amount of money collected by him on accounts due and owing on June 29, 1927, and from other sources of revenue to which the lien of the mortgage never attached."

The master found that of the fund of $27,480.56 in the hands of the receiver on January 15, 1928, amounts aggregating $15,526 had arisen from unmortgaged property sources, leaving a balance arising from mortgaged property sources of $11,954.56. The master also found, and it is not disputed but admitted by all parties, that, by agreement between counsel for the Mortgage Loan Company and counsel for the trustee in bankruptcy, the allowances made by the court to the receiver and his counsel were to be deducted from the funds in the hands of the receiver, and that, subsequent to the perfection of the first appeal, these allowances were paid, amounting in the aggregate to $8,406.06, leaving a balance of the fund in the sum of $19,074.50, plus interest, to be divided between the claimants on the basis of the proportionate interest which the master found each claimant had in this fund.

The court overruled exceptions to the special master's report filed by the trustee in bankruptcy, entered an order allowing the special master $2,000 for services rendered by him, allowed stenographic fees in the sum of $135.20, and ordered that the amount of the compensation and expenses so allowed be taxed against the respective interests of the Mortgage Loan Company and the trustee in bankruptcy in the respective proportions of their interest in the fund involved, and thereafter entered its decree approving and confirming the report of the master, and ordering and adjudging a distribution of the funds in accordance with that report. From this decree both parties have appealed; but, in the view we take of the issues, it will only be necessary to consider the appeal of the Mortgage Loan Company.

The opinion of this court on the former appeal constituted a part of its mandate.

Gulf Refining Co. v. United States, 269 U. S. 125, 46 S. Ct. 52, 70 L. Ed. 195; Metropolitan Water Co. v. Kaw Valley Drainage Dist., 223 U. S. 519, 32 S. Ct. 246, 56 L. Ed. 533; Great Northern R. Co. v. General Railway Signal Co. (C. C. A. 8) 57 F.(2d) 457; H. P. Coffee Co. v. Reid, Murdoch & Co. (C. C. A. 8) 60 F.(2d) 387.

On March 26, 1928, the Mortgage Loan Company filed petition for an order directing the receiver to pay it $27,480.56, then in the hands of the receiver, after deducting therefrom whatever allowance might be made by the court to the receiver for his services, and to turn over to that company the accounts receivable in the sum of $5,496.56. It is observed that in the very inception of this controversy it was claimed that the receiver had in his hands this sum of $27,480.56, and that it had been received by him as rents and issues from the mortgaged property, and which, under the terms of the mortgage, had been pledged as security for the mortgage debt. The receiver, as said by the special master in his report, on the present appeal reported this sum of money as representing "the net result of his operations of the Buckingham Main Hotel property." The special master also states in his report that: "The parts of the receiver's report which were before the Court of Appeals did not disclose that he improperly included in this report as receipts arising from his operation of the Buckingham Main Hotel property, large amounts of money collected on accounts due and owing on June 29, 1927, and from other sources of revenue to which the lien of the mortgage never attached."

The receiver had been notified by counsel for the Mortgage Loan Company that revenue from the hotel proper had been used for other purposes in connection with the affairs of the Buckingham Realty Company, and that the accounts of the Buckingham Hotel and the Buckingham Annex had been intermingled, with the result that frequently the earnings from the Buckingham Hotel, which were subject to the mortgage, had been used to pay operating expenses and carrying charges of the Buckingham Annex. The receiver was therefore requested to segregate the revenue from the Buckingham Hotel from the revenue from the annex, or any other properties, and to keep the accounts separately. The receiver promptly advised that the request that the accounts be kept separately met with his approval, and that he would proceed accordingly.

The receiver's report as embodied in the record on the former appeal shows, first, "Cash Receipts and Disbursements, Buckingham Annex Hotel, July 14, 1927, to January 15, 1928." Under this heading appears a statement of the receipts and disbursements by the month. Then appears the heading, "Cash Receipts and Disbursements, Buckingham Main Hotel, June 29, 1927, to January 15, 1928." Under this heading appears, first, a statement of the receipts by the month, these totaling $202,433.45; second, disbursements stated by the month, these amounting to $174,952.89. Then appears, "Cash Balance on Hand, Main Account, $27,480.56," indicating that the receiver had meticulously separated the income and issues received from the Buckingham Main Hotel from his receipts from all other sources.

The mortgage of the Mortgage Loan Company, as has been noted, pledged "the rents, issues and profits" arising from the mortgaged property, and contained provision that, in event of default, the trustee named in the mortgage should be entitled to immediate possession of the mortgaged property, either directly or through a receiver, and should "have the right to control, manage, and operate the same, and collect the revenue therefrom, and after the deduction of expenses incident thereto shall apply the revenue therefrom to the payment of that portion of the debt then in default," etc. It is also provided that "any surplus remaining in the hands of the trustee as the result of such use and management, shall be returned to the party of the first part, or to the parties entitled thereto."

In this condition of the record, this court held that the $27,480.56 in the hands of the receiver on January 15, 1928, were funds derived from revenues, rents, and issues of the mortgaged property, and that the Mortgage Loan Company was entitled to have these revenues, rents, and issues applied to its debt, notwithstanding the fact that it had not taken over possession of the property, nor had a receiver appointed. Mortgage Loan Co. v. Livingston (C. C. A.) 45 F.(2d) 28. The Mortgage Loan Company's application was directed to this specific fund, and, if the fund in fact did not represent rents and issues from the mortgaged property, that defense should have been presented at the trial of the issues in the lower court. The trustee was not at liberty to split up his defenses, but it was incumbent upon him to interpose whatever defenses he had to the claim of the Mortgage Company, and to support these defenses by evidence.

It is now contended not only that the receiver's report was erroneous, but that this court committed palpable error in holding that the funds shown by his report had been received by him as rents and issues from the mortgaged property. The trustee has proceeded on the apparent theory that he was entitled to a retrial of the issues in this case, and what has been done in this case was in effect to retry the issues of fact, and some forty pages of the master's report is devoted to an attempted exposition of the errors in the receiver's report. The evidence before the special master consisted of books, statements by accountants, reports of bookkeepers, and oral evidence, all for the purpose of attacking and discrediting the report of the receiver in evidence and unchallenged on the former appeal. On this issue we need only say that this is a suit in equity, and on reversal a new trial was not ordered, and the trustee was not at liberty to supply the evidence which he failed to produce on the first hearing. Williams v. Ansehl (C. C. A. 8) 279 F. 550, 551; Harrison v. Clarke (C. C. A. 8) 182 F. 765, 767; Gaines v. Rugg, 148 U. S. 228, 13 S. Ct. 611, 37 L. Ed. 432; In re Sanford Fork & Tool Co., 160 U. S. 247, 16 S. Ct. 291, 40 L. Ed. 414; Wenborne-Karpen Dryer Co. v. Cutler Dry Kiln Co. (D. C.) 21 F.(2d) 692.

This court in Williams v. Ansehl, supra, said: "As on appeals in equity an appellate court of the United States tries the case de novo, a trial court can, upon a reversal, only enter a decree in conformity with the opinion and mandate. The District Court cannot vary it or add anything, but must enter a decree strictly in accordance with the directions of the appellate court."

In Harrison v. Clarke, supra, this court said: "It is well-settled practice in the federal courts of appeal in reviewing equity causes to dispose of them finally on the record before the appellate court and not remand them for further trial in the Circuit Court."

As to the claim that this court on the record before it committed palpable error, it need only be pointed out that not only was no petition for rehearing filed, but there was no motion made in this court before the mandate went down to correct the opinion if it contained misstatement of facts. Counsel were charged with knowledge of the fact that the opinion as rendered by this court would become a part of the mandate binding upon the court below, and hence, if it contained any material misstatement of fact, it was certainly incumbent upon counsel to have brought that matter to the attention of this court by proper motion to correct the opinion. The errors of this court cannot be corrected through the agency of a special master appointed by the lower court to re-examine the facts pertinent to the issues and to retry the case, nor can they be corrected by the lower court upon the remand of the case. There were open to the appellee, after the handing down of the opinion and before the mandate went down to the lower court, the right to file petition for rehearing, the right to file motion to correct the opinion, and the right to apply to the Supreme Court for a writ of certiorari. None of these remedies were invoked, but instead there has been a retrial and a re-examination of all the facts pertinent to the issues. The litigant is entitled to his day in court, but, when he has that day in federal court in an equity suit, it is incumbent upon him then to produce his evidence and make his record, and, when the record is so made, generally speaking, it is a closed book.

This court having determined on the former appeal that the designated funds and the accounts receivable in the hands of the receiver constituted rents and issues which were subject to the mortgage of the appellant, when the cause was remanded it remained only for the lower court to determine what amount was deductible therefrom on account of allowances made to the receiver and his counsel for services, and to direct the receiver to turn over and deliver to the Mortgage Loan Company and its receiver the balance of the cash with the accounts receivable. It now appears that the amount so deductible has on stipulation of the parties been determined by the court, so that there remains no issue to be decided by the lower court.

■ After the mandate went down to the lower court, the Mortgage Loan Company, on October 18, 1932, filed a petition for reimbursement for interest alleged to have been paid by it on the first mortgage. Substantially this same motion has been presented to, and passed upon by, the lower court on various prior occasions. The lower court held that there had been no such payment, except as a matter of bookkeeping; that the court had previously held that the interest had not been paid. We are of the view that the question was not open to the Mortgage Loan Company, and we are satisfied with the findings of the lower court and its conclusions on this issue. The issue had been determined adversely to the Mortgage Loan Company, and

could not be revived by the subsequent filing of this motion.

The decree appealed from is therefore reversed as to the claim of the Mortgage Loan Company on account of the revenues, rents, issues, and profits in the hands of the receiver, and the cause is remanded to the lower court, with directions to enter order and decree in accordance herewith.