## CRAIG v. CONSOLIDATED CEMENT CORPORATION.

### No. 884.

Circuit Court of Appeals, Tenth Circuit.
March 22, 1934.

Austin M. Cowan, of Wichita, Kan. (W. A. Ayres, C. A. McCorkle, J. D. Fair, W. A. Kahrs, and Robert H. Nelson, all of Wichita, Kan., on the brief), for appellant.

Homer H. Berger, of Kansas City, Mo. (W. D. Jochems, of Wichita, Kan., and E. R. Morrison, of Kansas City, Mo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

Appellee sued for the purchase price of cement purchased by J. W. Craig, appellant's testate, hereafter referred to as appellant. By way of counterclaim, appellant prayed for judgment on $5,000 of bonds issued by appellee. After a trial without a jury, recovery on the counterclaim was denied. Error is assigned to that ruling.

The bonds tendered to apply on the cement purchased were part of an issue of $5,-000,000 dated March 1, 1926, and due March 1, 1931. The issue was under a trust agreement of even date; the bonds contain a promise to pay bearer the amount thereof, but recite that the rights of the holders are subject to the provisions of the trust agreement, and that

"All rights of action on this note and the annexed interest coupons, except as otherwise provided by said trust agreement, are vested in said trustee, and the enforcement thereof is governed by the provisions of said trust agreement."

J. W. Craig was a member of the discount committee of The Union National Bank. That bank acquired these bonds in 1927. On March 1, 1931, they became in default. Craig testified that between March 5th and 10th he bought the bonds from his bank for $4,500 cash. The records show he acquired them on March 27th, and gave his note in payment. Whichever is correct, he did acquire them for value, after they were due and in default. Craig then, for his stone company, ordered cement of appellee, and after delivery thereof, and on June 5, 1931, tendered these bonds in payment. On October 16, 1931, the trustee brought an action under the trust agreement, receivers were appointed and an order restraining other actions issued. The present suit was filed September 26, 1931, and the answer and counterclaim filed October 26th.

We do not stop on the question of the right to counterclaim on these bonds in the face of the restraining order issued in the receivership action, for we are convinced that the trial court's decision was right on the merits.

Whether the owner of one or more of these bonds is vested with a personal right which he may assert against the corporation, or whether his right is to share with other bondholders in the proceeds of a right vested alone in the trustee, must be determined by an examination of the bond and the trust agreement. The following are significant provisions of the trust agreement:

"This Agreement is for the common and equal use, benefit and security of all and singular the present and future holders or owners of said notes and coupons, or any of them, without preference, priority or distinction of any of said notes and/or interest coupons over any of the others by reason of priority in the issue, authentication, sale or negotiation thereof or otherwise.

"All rights of action on or because of said notes and any interest coupons thereto appertaining, or any of them, or under this Agreement, except as hereinafter otherwise provided, are hereby expressly declared to be vested exclusively in the Trustee, and such rights may be enforced by the Trustee without the possession of any such notes or interest coupons. Any suit or proceeding instituted by the Trustee shall be brought in its name

as Trustee, and any recovery or judgment shall be for the pro rata benefit of the holders of said notes or interest coupons or both, as hereinbefore provided. No holder of any such note or interest coupon shall have any right to institute any suit, action or proceeding (except for the conversion of notes into stock as hereinbefore provided) for the enforcement of the terms of this Agreement, or of such notes or interest coupons, or any of them, without first giving to the Trustee written notice of the fact that default has occurred and continued beyond the period of grace, if any, herein provided in respect thereof, nor unless also the holders of at least one-fourth in amount of the then outstanding notes shall have requested the Trustee in writing, and shall have afforded to it a reasonable opportunity, to institute such action, suit or proceeding in its own name, and shall have offered satisfactory indemnity to the Trustee, and the Trustee shall have neglected or refused so to do."

This language is plain and unambiguous. The plan clearly contemplates that all bondholders shall be on a parity, and that one may not secure an advantage over another by individual action or counterclaim, and that the company shall not be harassed by actions by individual bondholders. The right of a bondholder is derivative; he may compel the trustee to act; if the trustee fails, then and then only, may the bondholder proceed individually. We are referred to clauses in the trust deed giving the company the right to redeem all or part of the bonds before maturity at a premium, and reserving in the company the right to pay directly to the bondholders after default but before suit is brought by the trustee. These clauses raise no ambiguity, and do not require that the quoted provisions of the bonds and the trust agreement be ignored.

The authorities sustain the validity of provisions such as we have here, and the extensive and intricate web of corporate financing in this country is woven about the legality of such plans. The provisions of the trust indenture construed in Allan v. Moline Plow Co. (C. C. A. 8) 14 F.(2d) 912, are indistinguishable from the one before us; the facts more strongly support individual action by the bondholder than the facts here. It was held that the provisions of the trust deed permitted individual action on the bonds only on express conditions. The Fourth Circuit has denied a bondholder the right to sue under similar provisions in a deed of trust. Home Mortg. Co. v. Ramsey (C. C. A.) 49 F.(2d) 738. To the same effect, see Lidgerwood v. Hale & Kilburn Corp. (D. C. N. Y.) 47 F.(2d) 318; McGeorge v. Big Stone Gap Imp. Co. (C. C. Va.) 57 F. 262; Harvey v. Illinois Power & Light Corp. (D. C. Ill.) 3 F. Supp. 489; Crosthwaite v. Moline Plow Co. (D. C. N. Y.) 298 F. 466. Kimber v. Gunnell Gold Min. & Mill Co. (C. C. A. 8) 126 F. 137, is readily distinguishable, for there the trust indenture only purported to restrict the bondholder's right to foreclose the lien, but did not, as here, restrict his right to sue at law on the bond. Bank of Commerce & Trust Co. v. Hood (C. C. A. 5) 65 F.(2d) 281 was a receivership action; it was held that where a bank deposit was pledged as additional security for bonds purchased by the bank, the bank could not be required to pay out on the deposit until the bonds were paid. That decision has no bearing here.

The bonds and trust agreement make appellant's right to sue on these bonds, either directly or by way of counterclaim, dependent upon conditions precedent which have not occurred. The agreement is valid, and has been uniformly sustained by the federal courts. This opinion might well end here, but the ingenious argument of learned counsel for appellant deserves a word of recognition.

That argument, as we understand it, is this: That notwithstanding the prayer to recover judgment on the bonds in appellant's counterclaim, the only relief sought is to hold appellee to the balance disclosed when a balance is struck between the obligations. That even if appellant has no right to sue on the bonds, he was the owner of the appellee's obligation represented thereby, and may use it to arrive at the balance owing appellee. Support for the contention is thought to be found in the cases which hold that although a sovereign may not be sued by a subject, its obligation may be used as a counterclaim when the sovereign sues the subject; and in the cases where a debtor of an insolvent is permitted to set off obligations of the insolvent to him.

Perhaps the most satisfactory answer is that our task is to construe the bond and the trust agreement; a fair reading of those instruments convinces us that it was intended that, save upon conditions not here present, a bondholder may not sue upon his bond or use it to offset his indebtedness to the corporation. An answer, pitched more closely to the key of the argument, is that a bondholder's right, as well as his remedy, is traceable through the trustee, to the end that bondholders will share alike in the obligation and lien of the trust agreement. The critical analysis of Judge Phillips, speaking for this court, in

Vinson v. Graham, 44 F.(2d) 772, certiorari denied 283 U. S. 819, 51 S. Ct. 344, 75 L. Ed. 1435, makes it unnecessary here to discuss "causes of action" or "rights of action."

By this holding, we do not deny that a bondholder has a beneficial, although participating, right in an obligation of the corporation and a similarly restricted lien on the assets pledged. Such a qualified right and lien may be cognizable in equity, if need there be. Fraud or collusion or other like circumstance might well persuade a chancellor to reach through the trustee to protect the beneficial owner. Or, equities might exist that would support an equitable set-off. But this effort of a bondholder, thinly veiled, to gain a preference over his fellows offers no appeal to the conscience of the chancellor, if the cause were in equity, which it is not.

The judgment below is affirmed.