## MORTGAGE LOAN CO. et al. v. LIVINGSTON. *
### No. 10207.

Circuit Court of Appeals, Eighth Circuit.
June 1, 1935.

Rehearing Denied June 28, 1935.

*Writ of certiorari denied 56 S. Ct. 123, 80 L. Ed. —.

See, also, 45 F.(2d) 28; 66 F.(2d) 636.

Paul Bakewell, Jr., of St. Louis, Mo., for appellants.

Harry A. Frank, of St. Louis, Mo., for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant Mortgage Loan Company held a second mortgage upon property of the Buckingham Realty Company, which operated the Buckingham Hotel in St. Louis, Mo. Appellant Goodson was trustee in this mortgage. The first mortgage was owned by the Real Estate Mortgage Trust Company. By reason of defaults under the terms of the second mortgage, trustee Goodson advertised the property for sale on June 29, 1927. Two days before the date of the proposed sale an involuntary petition in bankruptcy was filed against the Buckingham Realty Company, a receiver was appointed to take charge of its assets, including the mortgaged property, and the foreclosure was enjoined. Trustee Goodson at once advised the receiver of the terms of the mortgage, and asked that the revenues from the Buckingham Hotel be carefully segregated and held for application to the discharge of the obligations of the mortgagor under that mortgage. The receiver promptly answered that the segregation requested was approved, and that he would proceed accordingly. September 15, 1927, the mortgagee filed petition for leave to foreclose. The application was denied October 1, 1927. October 24, 1927, petition was filed requesting application of the rentals from the hotel in accordance with the provisions of the mortgage. No action upon this motion was taken at that time. December 3, 1927, the mortgagee filed motion to dissolve the restraining order and for leave to foreclose. This motion was denied December 5, 1927, but, when renewed December 17, 1927, it was granted, and foreclosure sale was made January 16, 1928.

When the receiver in bankruptcy surrendered possession of the property he had on hand the net sum of $27,132.51, derived from operating the Buckingham Hotel during his possession of approximately six months. He had paid neither taxes nor interest on the mortgage during this period. A petition for an order on the receiver to apply the rents received by him in accordance with the provisions of the mortgage was denied, the District Court holding that the mortgagee under the second mortgage was not entitled to the rents and profits accruing from the mortgaged property because it had not asked for a receiver, nor taken possession prior to the sale on January 16, 1928, and all rents and profits had accrued prior to that date. The receiver was ordered to pay the petitioners $5,711.47 on account of taxes and insurance on the property for the period from June 29, 1927, to January 16, 1928. From this ruling of the District Court the mortgagee appealed and the decision of this court is found under the title Mortgage Loan Co. v. Livingston, 45 F.(2d) 28. The opinion dealt exhaustively with the issues presented, held that the mortgagee was entitled to the rents and issues accruing after the appointment of the receiver, subject to allowances to the receiver and his counsel for services, and directed that the cause be remanded for further proceedings not inconsistent therewith.

In the District Court, upon remand, a controversy arose over the amount claimed to be in the hands of the receiver as rents and issues from the hotel property. A master was appointed and the trustee in bankruptcy sought thereby to relitigate this issue theretofore determined by this court. The ruling of the District Court was unsatisfactory to both parties, and a second appeal by the mortgage company and a cross-appeal by the trustee in bankruptcy followed. (C. C. A.) 66 F.(2d) 636. This court held to its original conclusion, and it resulted, after all allowances to the receiver, that the mortgage company received from the receiver in bankruptcy $18,696.-50, in accordance with the mandate of this court on the second appeal. The original claim against the estate, after foreclosure, was filed by appellant Goodson, trustee in the mortgage. Objection was made that, with foreclosure, all the powers, authority, and duties of said trustee ceased, and that the real party in interest was the Mortgage

Loan Company. The referee, while sustaining this objection, held that the claim might be amended by adding the owner of the mortgage bonds as the claimant. By amended proof of claim the Mortgage Loan Company was made a coclaimant. The amended claim as filed consisted of two parts, which we arrange and designate as follows:

**"Part I.**

| | | |
|---|---|---|
| Amount of loan made July 27, 1925........ | | $88,000.00 |
| Interest on same from 7/27/25–7/1/26 @ 6% | | 4,898.69 |
| Interest on $63,000.00 from 7/1/26–6/29/27 (date of bankruptcy)................... | | 3,698.81 |
| | | $96,597.50 |
| Credit amounts paid: | | |
| Interest received from 7/27/25–7/1/26 ......................... | $ 5,545.60 | |
| Credit principal amount received July 1, 1926................. | 25,000.00 | |
| Credit interest received on January 1, 1927, covering period from 7/1/26–1/1/27.............. | 2,250.00 | 32,795.60 |
| Balance due as of June 29, 1927, (date of bankruptcy) ............................ | | $63,801.90 |
| Credit amount for which property was sold at foreclosure sale on January 16, 1928 ...................................... | | 50,000.00 |
| Amount due as of June 29, 1927, after crediting amount received from sale of property at foreclosure................. | | $13,801.90" |

**"Part II.**

| | | |
|---|---|---|
| To amounts Necessary to Preserve the Estate Subsequent to the Filing of the Petition in Bankruptcy; Said Amounts Having Been paid by the Mortgagee, or Having Accrued to the Mortgagee After the Petition Was Filed, By Reason of the Injunction Issued By the Court Which Restrained the Foreclosure of the Mortgage and Which Retained Possession of the Property. | | |
| To taxes paid by the Mortgage Loan Company on Dec. 30, 1927, being taxes assessed against the property covered by the mortgage......................... | | $18,926.51 |
| Insurance premiums paid by the mortgagee on September 27, 1927............... | | 639.59 |
| Cost of advertising notice of foreclosure, which foreclosure was to be held in June, 1927, but which foreclosure was enjoined and restrained by the order of the District Court, entered on June 29, 1927 ...................................... | | 257.54 |
| Interest on the mortgage debt during the time the Receiver was in possession of the property—June 29, 1927 to January 16, 1928.................................... | | 2,097.42 |
| | | $21,921.06 |
| Credit, amount received from Isaac T. Cook, as Receiver of the Buckingham Realty Company, in accordance with mandate of the United States Circuit Court of Appeals......................... | | 18,696.50 |
| Balance ............................... | | $ 3,224.56 |

"Claimants pray that the above amount be paid to them as the actual and necessary costs of preserving the estate subsequent to the filing of the petition."

The referee allowed part I as a general claim against the bankrupt estate and disallowed part II. His order was approved and confirmed on review. The question presented on this appeal is whether the advertising cost of $257.54 and the taxes, insurance, and interest which accrued "while possession of the property was preserved to the estate by the bankruptcy court through its receiver," as set out in part II, should be allowed with full priority in class 1, section 64b of the Bankruptcy Act (11 USCA § 104(b), as insisted by appellants. These items originally aggregated $21,921.06, upon which is credited the amount of $18,696.50 received in accordance with the mandate of this court, leaving a balance in dispute of $3,-224.56, corrected to accord with the calculation made by the referee.

The contention of appellants is thus best stated in the language of their counsel: "It is our simple contention that when the general creditors obtained the injunction against foreclosure, and by virtue of that injunction, retained such possession as against the mortgagees, they did so in the interest of the general estate; that they took such possession cum onere, i. e., burdened with the obligations specified in the mortgage. The act of retaining possession carried with it the liability for compliance with all of those obligations, which accrued during the period that such possession was retained, because compliance with those obligations was a condition precedent to retention of possession."

Emphasis is laid upon the statement of this court that "the receiver took the property subject to the liens thereon and the obligations of the mortgagor with reference thereto." 45 F.(2d) 28, 30. From this it is inferred that this court has recognized the principle that, under such circumstances, the receiver and court have assumed the legal duty of discharging all the obligations of the mortgagor while possession is retained and foreclosure deferred, and that, if this duty is not discharged, the general estate becomes liable to the extent of such defaults in priority to the claims of general creditors. The language of this court in its opinion must be confined to the issues presented for de-

termination. In 45 F.(2d) 28, on page 34 Judge Gardner, speaking for this court, said: "The mortgagees are not filing a claim for deficiency against this common property of the bankrupt's estate, but they are asserting a claim to the rents and issues accruing after the appointment of a receiver, on the theory that such funds never became a part of the bankrupt estate. In other words, they are asserting their rights against the security."

It was found that the mortgage specifically pledged the rents and issues of the mortgaged property; that the receivership did not impair this pledge nor release the property or its income from the provisions of the mortgage, and that, had the foreclosure not been enjoined, and had the second mortgagee obtained possession on the 29th day of June, 1927, the rents and issues would have gone to it, and it might have applied them to the payment of the taxes and insurance. This court quoted approvingly, as applied to the case before it, the language of the opinion in Bindseil v. Liberty Trust Co. (C. C. A. 3) 248 F. 112, 115, as follows: "We are of opinion, therefore, that rents, which have been collected by the trustee from the bankrupt's encumbered property, are applicable to the discharge of the debt for which the encumbrance was given as against debts due general creditors, if claim thereto be seasonably asserted."

The language of this court on both former appeals should be confined to the issues before it as thus expressly stated.

The position of appellants is that, before a foreclosure suit can be stayed, on bankruptcy of the mortgagor, the trustee must show that there is an equity in the mortgaged property for the bankrupt estate. Bushong v. Theard (C. C. A. 5) 37 F.(2d) 690; Gugel v. National Bank (C. C. A. 5) 239 F. 676; Lerner Stores Corp. v. Electric Maid Bake Shops (C. C. A. 5) 24 F.(2d) 780. It is undoubtedly true, as has repeatedly been held by this and other courts, that a court of bankruptcy should not undertake the administration of assets in which the bankrupt estate is in nowise interested, as is the case where the mortgage and lien indebtedness is substantially in excess of the mortgaged property. In re Harralson (C. C. A. 8) 179 F. 490. It is, therefore, contended by appellants that, pursuant to this rule, the District Court, on three occasions, when it enjoined the advertised sale and denied two subsequent applications to foreclose, determined that the value of the property exceeded the amount of the mortgages; that, thereby, the general estate became liable for all obligations of the mortgagor, while the property was in the possession of the bankruptcy receiver. The effect of the action of the District Court in denying foreclosure cannot be so narrowly and strictly defined. The determination of whether a mortgagee shall be permitted to foreclose rests in the sound discretion of the bankruptcy court. Title & Trust Co. v. Wernich (C. C. A. 9) 68 F.(2d) 811, 814. "While valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation," (Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 738, 51 S. Ct. 270, 272, 75 L. Ed. 645); and, while ordinarily power to sell incumbered property of a bankrupt free of liens should not be exercised unless there is some equity or other benefit for general creditors to be derived from the sale, nevertheless, "whether the bankruptcy court shall exercise the power to sell incumbered property of the bankrupt free of liens, or sell merely the bankrupt's equity of redemption subject to the incumbrances, is a matter resting in the sound discretion of the court." Federal Land Bank v. Kurtz (C. C. A. 4) 70 F.(2d) 46, 47. It is obvious that both trustee and court must have reasonable opportunity to ascertain their duties in a given case. Large revenues were obtained from the Buckingham Hotel, and it may reasonably have appeared that a potential equity in the estate existed. Operation for a period of six months proved unsuccessful and foreclosure was permitted. The exercise of this discretion by the court does not subject the general estate to the drastic penalties urged by appellants. It appears that the expense of the foreclosure sale and the insurance premiums were paid by the Real Estate Mortgage Trust Company and charged back to the Mortgage Loan Company, second mortgagee. In Title and Trust Co. v. Wernich, Trustee, supra, it is said, "It is obvious that the mortgagee is primarily interested in the maintenance of adequate fire insurance and in the protection of such of the mortgaged property as is liable to destruction or removal;" and in Torrington Co. v.

Sidway-Topliff Co. (C. C. A. 7) 70 F.(2d) 949, 954, we find the following: "The burden was upon the mortgagee to see that the taxes were paid, if it cared to protect its interest in the property. There is no equitable rule by which the personal property assets of a bankrupt estate may be exhausted in order to protect the mortgage."

Compare In re Veler (C. C. A. 6) 249 F. 633, 643; Robinson v. Dickey (C. C. A. 3) 36 F.(2d) 147, 149; In re New York & Philadelphia Package Co. (D. C.) 225 F. 219.

■ It is true, as has been said, that the receiver in bankruptcy took the property subject to the mortgage liens thereon. These liens could not be displaced. But to take property subject to liens is very different from "assuming and agreeing to pay" those liens. The appellants herein were entitled to all the rents and profits realized by the receiver which the mortgagee would have enjoyed if permitted to foreclose. Mortgage Loan Co. v. Livingston (C. C. A. 8) 45 F.(2d) 28 and Id. (C. C. A.) 66 F.(2d) 636; In re Wakey (C. C. A. 7) 50 F.(2d) 869, 75 A. L. R. 1521. These rents and issues appellants have received. Generally speaking, the status of claims at the time of filing the petition in bankruptcy, and not at a subsequent time, fixes the right to share in the distribution of the bankrupt estate. Board of Commissioners v. Hurley (C. C. A. 8) 169 F. 92, 94. And "ordinarily interest on unsecured claims against bankrupt estate stops at time petition was filed." Brown v. Leo (C. C. A. 2) 34 F.(2d) 127. This rule applies to insolvent estates, but has no application to those that are solvent. Brown v. Leo, supra; Johnson v. Norris (C. C. A. 5) 190 F. 459, L. R. A. 1915B, 884; Coder v. Arts (C. C. A. 8) 152 F. 943, 950, 15 L. R. A. (N. S.) 372. In the latter case, Judge Walter H. Sanborn, speaking for this court, made the following pertinent remarks: "By the terms of the note and mortgage the mortgagor agreed to pay interest on his debt until it was paid, and that the mortgaged lands might be sold by the mortgagee, and that their proceeds might be applied to the payment of this debt and interest. The covenant for the sale and the application of the proceeds of these lands to the payment of the debt and interest was valid and binding, and it ran with the land, so that when the latter came to the hands of the trustee it was mortgaged for the payment of the interest as much as for the payment of the principal, and the proceeds of its sale necessarily came to his possession subject to the same charge. Another rule might prevail if the proceeds of the mortgaged property were insufficient to pay the mortgage debt and its interest in full and the mortgagee was seeking to collect an unpaid balance by sharing with other creditors in the distribution of the common property. He might not be entitled, then, to recover from the proceeds of the common property interest upon his debt to any later date than the unsecured creditors would recover interest upon their claims. But the proceeds of these mortgaged lands appear to be ample to pay the principal and interest of the debt to the mortgagee Arts, and where a trustee sells mortgaged property of the bankrupt's estate free of the mortgage, and the proceeds of the sale are sufficient for that purpose, the mortgagee is entitled to payment of the interest upon his mortgage debt as well as the principal, out of the proceeds in accordance with the terms of the note and mortgage."

■■ A purchaser at foreclosure sale buying subject to a tax lien cannot have the same discharged out of the general estate. Adams v. Bowen (C. C. A. 1) 46 F.(2d) 294; In re Veitch (D. C.) 101 F. 251; In re Hollenfeltz (D. C.) 94 F. 629. Appellants urge that they do not fall within this rule because they advanced these taxes before the sale took place and while the estate was constructively in possession of the receiver. The taxes were paid by appellants December 30, 1927. The foreclosure sale was made January 16, 1928. The injunction was dissolved and leave to foreclose was granted December 17, 1927. Appellants were then aware of the existence of these unpaid taxes. The receiver in the meantime had collected no rents and issues for which he has not made account under the mandate of this court. Under these circumstances, we think the payment of taxes falls within the rule announced in Adams v. Bowen, supra.

■ We are unable to find that the District Court departed from the exercise of a sound discretion in taking jurisdiction of the mortgaged property for the benefit of the general estate. Its receiver has accounted to the mortgagee for all the net rents and issues realized by him while the property was in his possession. The mort-

gagee has been postponed in the full enjoyment of its security, but this is one of the unavoidable incidents of the legitimate exercise of bankruptcy jurisdiction. By the purchase of the property at foreclosure sale it has possession of all that security could furnish to reimburse it for loans and advances made. It has the amount of its claimed deficiency allowed as a general claim. The amounts advanced for taxes and insurance must necessarily have been paid by it to protect its second mortgage if an earlier foreclosure had been permitted. On the record before us these charges were not assumed by the general creditors, when the receiver, by order of the court, took possession of the mortgaged premises.

It follows from these considerations that the order appealed from should be affirmed, and it is so ordered.