## CENTRAL STATES LIFE INS. CO. v. KOPLAR CO.

### No. 10381.

Circuit Court of Appeals, Eighth Circuit.

Dec. 17, 1935.

Rehearing Denied Feb. 5, 1936.

B. L. Liberman, of St. Louis, Mo. (Robert Burnett, Henry H. Stern, and Burnett, Stern & Liberman, all of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

The controversy involved in this appeal arose out of a proceeding under section 77B of the Bankruptcy Act, Section 207, title 11, U.S.C.A. This section deals with the reorganization of business corporations, except such railroads as are dealt with under the provisions of section 205, title 11, U.S.C.A.

The appellee, the Koplar Company (hereinafter for brevity's sake called appellee, simply), is a corporation under the laws of the state of Delaware, duly licensed to do business in the state of Missouri, wherein at St. Louis it constructed (and now holds the title of record to certain parcels of land and the four certain buildings thereon, called in the instant record) the Park Plaza Hotel, the Congress Hotel, the Senate Apartments, and the Embassy Apartments. Other properties are likewise so held by appellee, but these cut only a negligible figure in the case, and so need no particular mention.

On June 29, 1934, appellee duly filed its amended voluntary petition as a corporate debtor under the provisions of section 77B, supra. No trustee was appointed, but the debtor remained in possession, pursuant to the provisions of subdivision (c) of section 77B, supra. This possession was constructively that of a trustee duly appointed by the court, and was actual, except as is hereinafter noted.

Thereafter, and on March 5, 1935, a plan and an amended plan of reorganization were filed by the debtor, and on the same day an order was entered classifying the creditors. A motion to modify the classification of creditors was filed by appellant, and this motion was pending when this appeal was taken.

Appellant, a life insurance company, organized as a corporation under the laws of the state of Missouri, on April 5, 1935, filed its intervening petition in this proceeding and in the bankruptcy court, in which it set up among other things that it is the owner of $3,070,000, par value of 6 per cent. gold bonds series A, out of a total issue of $3,100,000 par value of said series; that said bonds are secured by a deed of trust,

R. H. McRoberts, of St. Louis, Mo. (Frank Y. Gladney, Jones, Hocker, Gladney & Jones, and Bryan, Williams, Cave & McPheeters, all of St. Louis, Mo., on the brief), for appellant.

executed by the debtor, which deed of trust also secures an issue of $550,000 par value 7 per cent. bonds of series B, junior in lien to series A; that said deed of trust was a lien on the land and buildings known as the Park Plaza Hotel, and the furniture, fixtures, and furnishings situate therein (the latter by virtue of a chattel deed of trust); that said series A bonds were and long had been in default; that the corporate trustee in said issues of bonds had refused to longer act as such and had resigned; that said properties embraced in the trust deed were subject to a second deed of trust securing an issue of $1,250,000, 7 per cent. bonds, of which $1,090,000 were outstanding; that the debtor does not have, and does not claim to have, any equity in said mortgaged property over and above the first and second mortgage indebtedness; that it is admitted by the plan of reorganization filed herein by the debtor that the holders of the second mortgage bonds have a claim against the debtor in excess of the value of their security; that the net operating income from the mortgaged properties is insufficient to make the payments required to be made on series A of said bonds; that lacking any equity in said mortgaged properties for the creditor, the properties are a burden upon the estate, and as a conclusion of law the proposed intervener, appellant herein, is entitled to have any deficit over and above the value of its security liquidated and allowed as a general claim.

It is further averred by appellant, also as a conclusion of law, that upon the facts set up in its intervening petition, it is entitled to have the amount of such deficit, over and above the value of the security held by it, determined by a sale of the mortgaged properties pursuant to the terms of the deed of trust which secures the bonds held by it, to the end that it may have established the sum due it as a general creditor.

Upon the above facts and others, which will be set forth in course of the discussion, if they shall become pertinent, appellant in its intervening petition prayed that it might be permitted to intervene, and therein for orders—

"First, your petitioner to appoint a Successor Corporate Trustee in accordance with the terms and provisions of said first mortgage deed of trust as supplemented by said chattel mortgage, if it shall elect to do so;

"Second, your petitioner, at its option, to either cause the said Successor Individual Trustee, and such Successor Corporate Trustee, to sell at public auction the aforesaid mortgaged property in accordance with the power of sale contained in said first mortgage deed of trust, as supplemented by said chattel mortgage, or to cause said Trustees to institute a proceeding or proceedings at law or in equity for the foreclosure of the lien of said first mortgage deed of trust, as supplemented by said chattel mortgage, or, after giving notice in writing to the said Trustee or Trustees as provided in said deed of trust, as supplemented by said chattel mortgage, to itself institute a proceeding at law or in equity for the foreclosure there of;

"Third, said Trustees or your petitioner to join as a party defendant in any suit at law or in equity which may be instituted for the foreclosure of the lien of said first deed of trust, in addition to all other necessary or proper parties, the debtor herein and any Trustee or Trustees of the debtor's estate who may be hereafter appointed by this Court in this proceeding, and any Trustee or Trustees in bankruptcy who may hereafter be appointed, as provided in section 44 of said General Bankruptcy Act of 1898, as Amended, if an order of liquidation shall hereafter be entered herein; and for such further order or orders as may be meet and proper in the premises."

The debtor, appellee herein, opposed the intervention, a hearing was had, and evidence heard which tended to prove that the debtor held the record title to six certain parcels of land on which valuable improvements existed. Four of these are those already mentioned. In addition, it held title to certain two residences on Lindell avenue in the city of St. Louis. It also owned all of the capital stock of a realty company, which had a contract to purchase, from a wholly owned subsidiary of appellant, some seven other apartment buildings. But this contract seems to cut no figure in this case, and so may be eliminated from the discussion.

The Park Plaza Hotel is called in the record a monumental structure, built in 1929, at a cost, including site, furniture, and fixtures, of $4,656,508, exclusive of architect's fees and commissions. It is encumbered by a first deed of trust in which one George Graham, substituted individual trustee, is now the only remaining trustee, the corporate trustee, having as already stated

resigned, and no successor to it having been appointed. This deed of trust secures a bond issue in the sum of $3,070,000, of series A bonds as already said, all owned by appellant, of which said George Graham is president. All of series B bonds have been canceled of record. Series A bonds are further secured by a mortgage on the furniture and fixtures, as already indicated.

The above-named properties are also encumbered by a second deed of trust securing a further issue of bonds, of which $1,090,000 par value 7 per cent. bonds are outstanding.

All of the above bonds are in default, and Graham, as trustee in the deed of trust, is now, and since at least the 5th day of March, 1934, has been, in possession of the Park Plaza Hotel properties, pursuant to the following resolution of debtor's board of directors, to wit: "Resolved, that in order to save expense it is for the best interests of The Koplar Company to have George Graham as Successor Individual Trustee remain in sole possession of the Park Plaza property as Trustee under the first deed of trust of The Koplar Company dated February 1, 1930, without having a Corporate Trustee appointed under said deed of trust to take joint possession with him, and the officers of this corporation are hereby authorized and instructed to request the Central States Life Insurance Company not to appoint or apply for the appointment of a Successor Corporate Trustee under said deed of trust unless and until the Central States Life Insurance Company shall deem it necessary or advisable so to do."

The Congress and Senate properties are encumbered by a deed of trust, securing an issue of bonds, of which $1,795,000 par value 6½ per cent. bonds are outstanding. These bonds are also in default, and the trustees in the deed of trust are likewise in possession of the Congress and Senate properties.

The Embassy properties are encumbered by a deed of trust securing an issue of bonds of the par value of $544,000, and the trustees in the deed of trust are in possession.

The two residences above mentioned are encumbered by a mortgage in the sum of $85,000. In addition to the secured debts above set out, the debtor has claims against it in favor of general and unsecured creditors in the aggregate sum of about $200,000.

In the debtor's voluntary petition filed herein, it averred that it had a substantial equity in each of the above-mentioned properties. In its plan of reorganization, it deals alone specifically with the Embassy, and the Congress and Senate properties. It says as to the bonds held by the appellant, to wit, $3,070,000 par value, evidenced by the series A bonds and secured by the first deed of trust, that "the claims of the bondholders does not exceed the value of their security." This is the reason set out in the plan of reorganization for making no specific provision for the Park Plaza Hotel. Concerning the bonds secured by the second deed of trust on the Park Plaza Hotel, to wit, the $1,090,000 par value 7 per cent. bonds, the plan says, in effect, that the bondholders have not sufficient security and a deficiency judgment as general unsecured creditors, for the deficit, must be taken care of. The amount of such deficit has not yet been ascertained.

In this situation, and before any action had been taken on the proposed plan of reorganization and while a motion of appellant to modify the order classifying creditors was pending, this appeal was taken. The appeal is from an order denying the appellant leave to foreclose its deed of trust on the Park Plaza Hotel properties, and is bottomed on the propositions: (a) That since the first liens of appellant are valid and indisputed, (b) since the debtor has no equity in the above properties over and above the first and second deeds of trust thereon, and (c) since said properties are therefore burdens on the estate of the bankrupt, appellant has an absolute right to foreclose under the provisions of section 77B, outside of the bankruptcy court, and so the denial of this right of foreclosure by the court nisi was error. And this denial is the sole error urged for reversal.

It may be conceded that if the case involved a proceeding under the Bankruptcy Act of 1898, unmodified and unaffected by the amendments made thereto by the provisions of section 77B, it would be difficult, under fairly well-settled law, to avoid the conclusion urged on us by the appellant. For present the basic elements, (a) that the deed of trust (or other similar lien) is valid and unquestioned; (b) that the fair market value of the mortgaged premises is of less, or no greater value, than the amount of principal and interest (and costs, if made preferred by the lien's terms) of the debt secured; and (e) (as a sort of corollary) that the care and administration of the mortgaged premises, offering no probability of equity for the creditors, will be burdensome to the bankrupt estate, the bankruptcy

court has the power to enter an order permitting the trustee of the bankrupt estate to abandon the encumbered property, and thus leave the mortgagee to work his will thereon pursuant to the terms of the lien instrument and the general law. Quinn v. Gardner (C.C.A.) 32 F.(2d) 772, 773; Hobbs Tie & Timber Co. v. Isaacs (C.C.A.) 61 F.(2d) 1006; Powers v. Johnson (C.C.A.) 71 F.(2d) 48, 55; Kimmel v. Crocker (C.C.A.) 72 F.(2d) 599, 601; In re Kirk (D.C.) 4 F.Supp. 328; First National Bank v. Lasater, 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408; In re Coney Island Hotel Corp. (C.C.A.) 76 F.(2d) 126; In re Civic Center Realty Co. (D.C.) 26 F.(2d) 825; In re Schulte-United, Inc., (D.C.) 50 F.(2d) 243, 244; In re Olivit Bros. Inc., (D.C.) 57 F.(2d) 718; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Mortgage Loan Co. v. Livingston (C.C.A.) 78 F.(2d) 517.

On the threshold, we are met by the contention of the appellee that regardless of whether the rule above stated has been modified or abrogated by the provisions of section 77B, supra, under which the proceeding at bar is being administered, appellant yet had no right to intervene or to demand an order permitting it to foreclose. This contention is bottomed on the fact that appellant had not at all complied with the terms of the deed of trust, for that such instrument vested the power to foreclose in the trustees in the deed of trust and not in the bondholders, except under a situation, not at all present here.

The provision of the deed of trust, upon which the above contention rests, reads thus: "It is hereby declared and agreed as a condition upon which each legal holder or holders of all or any of said bonds receives and holds the same, that no holder or holders of any of said bonds or coupons shall have the right to institute any proceeding in law or in equity, of whatever character or kind for the foreclosure of this deed of trust or for the execution of the trusts herein provided, or for the appointment of a receiver, or for any other remedy under this instrument, or for enforcing the lien hereby created, without having first made application to the Trustees, as hereinbefore provided, and unless the Trustees shall have wrongfully or unreasonably failed to institute proceedings for the foreclosure of this deed of trust, or for the execution of the trusts hereunder, or for the appointment of a receiver, or for any other remedy under this deed of trust or for enforcing the lien hereby created, as the case may be, for sixty (60) days after the giving of notice in writing to the Trustees so to do. All rights of action under this deed of trust are hereby vested in the Trustees herein, subject only to the provisions of this Section 1 of Article IV hereof, and may be enforced by them in their discretion without the possession of any of the bonds or coupons or the production thereof on any trial or proceeding hereunder."

No effort was made by appellant to comply in any wise with the above-quoted provision of the deed of trust; but without doing so, it prayed that it might make certain elections touching the matter and manner of foreclosure, if it desired to do so. There was then and there is now no corporate trustee. And the individual trustee was then and is now the president of appellant. Obviously no objection to his serving as such trustee or personally moving in the matter of foreclosure could be urged by appellant which holds all of the outstanding bonds secured by the first mortgage.

By the express provisions of the deed of trust the power to foreclose was taken away from the bondholders and from any and all of them and conferred on the trustees; subject, of course, to exceptions nowhere appearing in this case. The rule in such a situation, that the bondholders may not themselves act to foreclose, seems fairly well settled everywhere; but especially has this rule been rather uniformly adhered to in this court. Central West Public Service Co. v. Craig (C.C.A.) 70 F.(2d) 427; Carson v. Long-Bell Lumber Corp. (C.C.A.) 73 F.(2d) 397; Allan v. Moline Plow Co. (C.C.A.) 14 F.(2d) 912; Palmer v. Bankers' Trust Co. (C.C.A.) 12 F.(2d) 747. Indeed, the identical rule is recognized and enforced in the great majority of jurisdictions throughout this nation. See note to Baltimore v. United Railways & Electric Co., 16 L.R.A. (N.S.) 1006; Home Mortgage Co. v. Ramsey (C.C.A.) 49 F.(2d) 738; Rodman v. Oil Co. (C.C.A.) 66 F.(2d) 244; Craig v. Consolidated Cement Corp. (C.C.A.) 69 F.(2d) 613.

The reason for the rule is not far to seek. If in a mortgage securing thousands of bonds every holder of a bond or bonds were free to sue at will for himself and for others similarly situated, the resulting harassment and litigation would be not only burdensome but intolerable.

True, the peculiar and particular facts of the instant case seem here to render this contention of appellee highly technical. But be this as may be, the sole bondholder here bought the bonds saddled with the knowledge of the provision above quoted. And the very facts of the case rendered compliance easy and simple, and deprived the bondholder of any legal excuse for not calling on the trustee to act. So it seems clear that absent plea and proof, as here, of any fact which would excuse compliance by the bondholder with the contractual duty of first applying to the trustees, or residual trustee to take action, it had no right to bring the intervention. If it were necessary to appoint a corporate trustee to the existing vacancy in that office, appellant had the power under the plain terms of the mortgage to do this without even resorting to a court of general jurisdiction for such order of appointment. There were no formal pleadings in opposition to the proposed intervention, nor does the order denying it disclose on what ground denial was bottomed.

Since this is so, and since, in the view we are constrained to take of the case, appellant's proper representatives should have the right, when and if the situation shall warrant, to again apply for leave to foreclose, it is proper to deal briefly with the time and conditions at, and under which such right may be exercised. Hobbs Tie & Timber Co., v. Isaacs (C.C.A.) 61 F.(2d) 1006.

For the major part the cases urged on us as controlling arose under the Bankrupt Act (11 U.S.C.A.) as it stood prior to the enaction of section 77B. It is not only clear, but there is controlling authority for the view, that the above section worked a rather radical change in the law on the precise question before us here. Continental Illinois Nat. Bank v. Chicago, Rock Island & P. R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110.

In the above case, it was said (294 U.S. 648, at page 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110): "It may be that in an ordinary bankruptcy proceeding the issue of an injunction in the circumstances here presented would not be sustained. As to that it is not necessary to express an opinion. But a proceeding under section 77 (11 U.S.C.A. § 205) is not an ordinary proceeding in bankruptcy. It is a special proceeding which seeks only to bring about a reorganization, if a satisfactory plan to that end can be devised. And to prevent the attainment of that object is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its provisions futile."

It must of course be conceded that the bankruptcy court may not close its eyes to hurtful results which may directly ensue from a denial of foreclosure outside the court and according to the terms of the lien instrument. But as said in the Chicago, Rock Island & P. R. Co. Case, supra, the matter of granting permission to foreclose outside of the bankruptcy court and without regard to any plan of reorganization, present or future, "is addressed not to the power of the court, but to its discretion—a matter not subject to the interference of an appellate court unless such discretion be improvidently exercised."

It is obvious therefore that the sole question on the phase under discussion in the case at bar is whether, in refusing to appellant the right to foreclose at the time and stage of the proceeding at which appellant made the application, the discretion exercised by the court nisi was a sound judicial discretion. The answer depends upon the facts and situation before the court when it made the order in controversy; for the Supreme Court, discussing section 57 (h) of the Bankrupt Act, section 93 (h), title 11, U.S.C. (11 U.S.C.A.) § 93 (h), herein much relied on by appellant, said: "Nor does section 57h, 11 U.S.C. § 93 (h), 11 U.S.C.A. § 93 (h), also invoked by petitioners, have any pertinent application to the question under discussion in the light of the provisions, purpose and aim of section 77 [11 U.S.C.A. § 205]." It is of course to be held in mind that the Supreme Court was discussing the railroad reorganization amendment, when it used the language above quoted; but it seems clear that so far as concerns "purpose and aim," the analogy between section 77 and section 77B (11 U.S.C.A. §§ 205, 207) is absolute and thorough-going. And so what is said of the one must in the main apply to the other. Let the facts be looked to.

The record shows that when the order here complained of by the appellant was entered, a plan of reorganization was pending, undisposed of; likewise a motion made by appellant to reclassify creditors was pending. The record discloses that there would not be any equity for any other creditor, secured or unsecured, in the Park Plaza Hotel, over and above the sums due on the

first, the supplemental chattel, and second mortgages thereon, and even as to the *second mortgage there would be a deficit,* whereof the amount had not yet been ascertained. The trend of the hardly disputed evidence was that it would cost now to reproduce the Park Plaza Hotel well-nigh what it cost to build and furnish it in 1929 when it was constructed. And so the estimated fair value of the hotel and its furnishings exceeds by $500,000 the aggregate of outstanding bonds in both the first and second mortgages. The evidence conclusively showed that there is now, that is when the order was entered, no market whatever for this hotel. So, it is not difficult to see that if sold now, no one except appellant could be or would be a bidder at such sale, and an unnecessary sacrifice of value would occur, with the result that the deficiency to be allowed in favor of appellant as a general creditor would be shockingly unjust to the estate and to other unsecured creditors, as also to the holders of bonds secured by the second mortgage. Even by the proposed plan pending before the court, the claims of these latter bondholders were not definitely fixed. As to them the proposed plan merely said: "The holders of the said second mortgage bonds have claims against the debtor in excess of the value of their securities. The amounts of their claims should be determined and adjudicated in the proceedings herein in accordance with the provisions of section 77B, of the amendment to the Bankruptcy Act. When the amounts of the claims of the second mortgage bondholders in excess of their securities have been thus determined, the said claims will be treated as claims of general creditors and the said bondholders will be entitled to participate in the provision made for general creditors as hereinafter provided."

Moreover, it seems clear from the language and provisions of section 77B, supra, that the approval and confirmation of the proposed, or any, plan of reorganization is a matter for the bankruptcy court. Proposal of a plan rested with those empowered by the act to propose, but disposal rested with the court. Certainly is this true of a plan not yet accepted by any party, or class interested, save by implication the debtor alone, which presented it. The question whether a plan, accepted by every party in interest and by the requisite number of each class of creditors, yet leaves any discretion as to approval by the bankruptcy court, is not involved here; for this is not the case presented.

■ The individual trustee in the first mortgage is, and long has been, in possession of the mortgaged premises. The income from its operation is fast increasing, and at a rate which, if continued, will more than take care of overhead, taxes, and interest on the first mortgage for the current year. So, without more we are of opinion that the discretion vested by law in the court nisi was not abused, when he refused to presently permit foreclosure to appellant. In this connection it is urged that the order entered is upon its face final, for that appellant is by its terms precluded from ever afterwards renewing its application. We think, if the order attacked is in fact subject to the objection urged, it resulted from a mere unintentional inadvertence, on the part of the trial court. Clearly, the trial court did not have the power to cut off forever, and under any situation which may hereafter arise, the right of the trustees in the first mortgage to foreclose. Hobbs Tie & Timber Co. v. Isaacs (C.C.A.) 61 F.(2d) 1006. If modification of the order made were deemed necessary, we would modify it so as to permit, without prejudice to a further application to be made by the proper representatives of the bondholder, in the first deed of trust, when and if the legal situation shall hereafter warrant. But in the view already taken by us, that the bondholder here had no legal authority to make the application for an order to foreclose, we deem modification of the order unnecessary; for an order denying action to one having no power to act should not constitute res adjudicata as against one having such power.

It follows from what is said that the case should be affirmed, without costs to either party, and so we order.